1



OMNI INSURANCE COMPANY
P.O. BOX 105019
ATLANTA, GA 30348-5019
PHONE: 800-727-6664 / FAX: 800-680-1904

POLICY CERTIFICATION

I, Scott Mascioli, Claims Litigation Manager for Omni Insurance Company, do
hereby certify that the attached declarations page and Pennsylvania Motor
Vehicle Policy are true and correct copies of the declarations page and policy in
effect for Shameka Renee Lamar, policy number 4140872, on October 8, 2012.

Scott Mascioli
Claims Litigation Manager
Omni Insurance Company

STATE OF PENNSYLVANIA}

COUNTY OF MONTGOMERY}

On the ____1 st____ day of ___April___, 2016 before me personally appeared
___SCOTT MASCIOLI___
to be known to be the person(s) named herein and who executed the above Certification and
___he___ acknowledged to me that___he___
voluntarily executed the same.

My term expires_____

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANDREW FUNK, Notary Public
Whitemarsh Township, Montgomery County
My Commission Expires May 11, 2019

 **OMNI INSURANCE COMPANY**
P.O. BOX 105440
ATLANTA, GA  30348-5440
(866) 300-6433

**DECLARATIONS**

| | |
|---|---|
| **INSURED NAME AND ADDRESS**<br>SHAMEKA RENEE LAMAR<br>2545 W SILVER ST<br>PHILADELPHIA, PA 19132 | **PRODUCER**<br>OREGON INSTANT AUTO (1000053279)<br>2653 S 6TH ST<br>PHILADELPHIA, PA  19148 |
| **PRIVATE PASSENGER AUTO**<br>**POLICY NUMBER:** 4140872<br>**DECPAGE ID:** 1 | **POLICY PERIOD:**<br>September 1, 2012 12:01 A.M.  to  September 1, 2013 12:01 A.M.<br>**DECPAGE EFFECTIVE:**<br>September 1, 2012 12:01 A.M. |

> IF YOU BUY COLLISION COVERAGE, YOUR POLICY PROVIDES COLLISION COVERAGE ON RENTAL VEHICLES. PLEASE REFER TO THE PORTION OF YOUR POLICY PROVIDING 'COLLISION' COVERAGE FOR ANY LIMITATIONS IN COVERAGE THAT MAY APPLY.

| VEHICLE | DRIVER | DISCOUNTS /<br>SURCHARGES |
|---|---|---|
| Vehicle: 1<br>Make: 2003 Chevrolet<br>Model: AVALANCHE 1500 BASE/Z66/Z71<br>VIN#: 3GNEC13T13G139408<br>Use: Pleasure Use<br>BI/MED/PhysDam Symbol: 315/495/13<br>Territory: 1     Tier: K | SHAMEKA RENEE LAMAR<br>Birthdate: 08/17/1980<br>Marital Status: Single with<br>custody of kids<br>License: PA 25387713<br>Points: 3<br>Class: SF32 | Double Airbag |

| COVERAGE (Premium for 12 months) | LIMIT | PREMIUM<br>VEH 1 | PREMIUM<br>VEH 2 | PREMIUM<br>VEH 3 | PREMIUM<br>VEH 4 |
|---|---|---|---|---|---|
| Premium is based on your selection of Limited Tort and the following: | | | | | |
| Bodily Injury Liability | $15,000 per person<br>$30,000 per occurrence | $ 696.24 | | | |
| Medical Payments | $5,000 per person | $ 392.12 | | | |
| Property Damage Liability | $5,000 per occurrence | $ 376.30 | | | |
| Uninsured Motorist BI    -    REJECTED | | | | | |
| Underinsured Motorist BI    -    REJECTED | | | | | |
| Total Premium for each vehicle: | | $ 1,464.66 | | | |
| Total Policy Premium | | | | | $ 1,464.66 |

Your premium includes $86.3 due to violations, accidents, or other Surcharges applicable.

| Policy Fee | $15.00 |
|---|---|

**YOUR POLICY DOES NOT PROVIDE PROTECTION AGAINST DAMAGES CAUSED BY UNINSURED MOTORISTS OR UNDERINSURED MOTORISTS.**

Only the insurance coverages indicated by a specific limit of liability and/or a premium amount are provided.

**ACCIDENTS/VIOLATION POINTS**

| Name | Date | Description | Surcharge<br>Points |
|---|---|---|---|
| SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold | 3 |

**FORMS AND ENDORSEMENTS**

1037 (06/10) - Pennsylvania Policy Jacket
1037-1 (06/10) - Pennsylvania Amendatory Endorsement
OMNI PA UMREJ - Uninsured Motorist Protection Rejection
OMNI PA UIMREJ - Underinsured Motorist Protection Rejection

COPY

## Disclosure of Use of Consumer Reports

In order to determine your eligibility and your premium for insurance products, American Independent Companies, Inc. obtains reports provided by independent consumer reporting agencies. These reports are used to verify and supplement information that you may provide to us. Examples of the type of consumer reports we may order include the following:

**Motor Vehicle / Driving Record Reports**
A Motor Vehicle Report (MVR) is obtained from your state Motor Vehicle Department or from an independent consumer reporting agency that relies on such records. This report reflects the driving record information they have on file for you or other operators under your policy, including accidents and motor vehicle violations.

**Insurance Claim Reports**
Insurance claim reports, such as C.L.U.E. (Comprehensive Loss Underwriting Exchange) and others, are provided by independent consumer reporting agencies that collect claims information from many insurance companies.

**Insurance Scores**
Insurance Scores are calculated for us using an analytical scoring model that objectively measures the relative likelihood of future insurance losses based on credit history files maintained by independent consumer reporting agencies.

The above consumer reports may be ordered in connection with the issuance, update, renewal or reinstatement of your policy and when seeking comparison quotes from the companies we represent.

### THIS NOTICE IS PROVIDED IN ACCORDANCE WITH THE FAIR CREDIT REPORTING ACT

#### Notice of Adverse Action

American Independent Companies, Inc uses reports obtained from consumer reporting agencies to determine insurance premiums. The types of reports we use are related to driving record (for auto policies), insurance claims (loss) history, and credit history. You are receiving this notice because your premium is higher than it would have been if your consumer report(s) had been more favorable. This decision is based upon information relating to one or more of the consumer reports listed below.

Please be advised that a consumer reporting agency did not make decisions concerning your premium and will be unable to provide you with specific reasons for your premium. If, however, you believe your consumer report information is incorrect, under the Fair Credit Reporting Act, you have the right to dispute the accuracy and/or completeness of any consumer report information directly with a consumer reporting agency.

Under the Fair Credit Reporting Act, you also have a right to obtain a free copy of your consumer report(s), and to obtain without charge all information in your file(s) at the consumer reporting agency or agencies, by making a request to the consumer reporting agency or agencies within sixty (60) days of receipt of this notice.

For driving record reports and insurance claims (loss) history reports, contact: LexisNexis Consumer Center, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004 (office located at 2885 Breckinridge Blvd. Suite 200, Duluth, GA 30096).If you wish to access the LexisNexis website, you can use the following address: http://www.consumerdisclosure.com

For credit reports, contact: LexisNexis Consumer Center, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004 (office located at 2885 Breckinridge Blvd. Suite 200, Duluth, GA 30096). Credit report information is used to calculate an insurance score, which is a measure of your loss potential. If you wish to access the LexisNexis website, you can use the following address: http://www.consumerdisclosure.com.

The insurance company listed on your policy declarations or with your policy quotation material took this action by issuing or offering you a policy at a higher premium. That company and American Independent Companies, Inc. took this action in connection with determining your premium. If you would like more detailed information regarding your insurance premium, write to us at Omni Insurance Company Consumer Affairs, P.O. Box 105021, Atlanta, GA 30348.

A-100.1 (02/10)



**OMNI INSURANCE COMPANY**
P.O. BOX 105440
ATLANTA, GA  30348-5440
(866) 300-6433

**DECLARATIONS**

**PRIVATE PASSENGER AUTO**
**POLICY NUMBER:** 4140872
**DECPAGE ID:** 1

**POLICY PERIOD:**
September 1, 2012 12:01 A.M. to September 1, 2013 12:01 A.M.
**DECPAGE EFFECTIVE:**
September 1, 2012 12:01 A.M.

| FORMS AND ENDORSEMENTS |
| --- |
| A-100.1 (02/10) - Adverse Underwriting Decision Notice |

**MANDATED COVERAGE NOTICE**

The laws of the Commonwealth of Pennsylvania, as enacted by the general assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages. Premiums for basic mandatory coverage at the **LIMITED TORT** option

Bodily Injury:  $15,000/30,000 - $696.24
Property Damage:  $5,000 - $376.30
Medical Benefits:  $5,000 - $392.12

_____
Authorized Signature

OMNI PA DEC (08/08)

COPY

THIS IS A TRUE AND CERTIFIED COPY OF THE ORIGINAL
_____  10/29/14
CUSTOMER SERVICE MANAGER   DATE
_____  12/29/14
NOTARY PUBLIC   DATE



Form 1037

Pennsylvania (06/10)

**Omni Insurance Group**
ATLANTA, GEORGIA

**Personal Auto Policy**

**Omni Insurance Company**

• • •

**PENNSYLVANIA**

## LIMITED TORT ALTERNATIVE INFORMATION NOTICE

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for noneconomic loss except that:

A. An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

1. Is convicted, or accepts Accelerated Rehabilitation Disposition for driving under the influence of alcohol or a controlled substance in that accident;

2. Is operating a motor vehicle registered in another state;

3. Intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury if the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

4. Has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law;

provided that nothing in paragraphs 1. through 4. shall affect the limitation of a person, precluded from maintaining an action for noneconomic damages under

i

# PERSONAL AUTO POLICY COVER SHEET – PENNSYLVANIA

Your personal auto insurance policy is a legal contract between you and your insurance company. Your insurance application and the policy forms indicated on your declarations page constitute your insurance policy.

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY CAREFULLY.**

The following is an index of the major provisions of your policy. Page numbers refer to the location of these provisions in the policy. Amendatory endorsements may be attached to your policy to modify these provisions or provide you with additional coverage(s).

## INDEX
## MAJOR POLICY PROVISIONS

YOUR DUTIES AFTER AN ACCIDENT OR LOSS ......................1

AGREEMENT ...................................2

DEFINITIONS ...................................2

PART A – LIABILITY COVERAGE ........8
  Insuring Agreement
  Supplementary Payments
  Exclusions
  Limit of Liability
  Out of State Coverage
  Financial Responsibility
  Other Insurance

iii

the limited tort alternative, to recover noneconomic damages under Uninsured Motorists Coverage or Underinsured Motorists Coverage.

B. An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

C. An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

(PP 03 38 12 98) Copyright, Insurance Services Office, Inc., 1998

ii

PART B – FIRST PARTY BENEFITS
COVERAGE / EXTRAORDINARY MEDICAL
BENEFITS COVERAGE ..................................16
    Definitions

SECTION B.1 – FIRST PARTY BENEFITS
COVERAGE ......................................................17
    Insuring Agreement
    — Basic First Party Benefit
    — Added First Party Benefits
    — Combination First Party Benefits
    Exclusions
    Limit of Liability
    Priorities of Benefits
    Non-Duplication of Benefits
    Part E—Our Right To Recover Payment

SECTION B.2 – EXTRAORDINARY
MEDICAL BENEFITS COVERAGE ...............23
    Limited Benefits
    Warning
    Insuring Agreement
    Exclusions
    Limit of Liability

PART C – UNINSURED / UNDERINSURED
MOTORISTS COVERAGE ...............................26

SECTION C.1 UNINSURED MOTORISTS
COVERAGE (NON-STACKED) ......................26
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

SECTION C.2 UNINSURED MOTORISTS
COVERAGE (STACKED) .................................33
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

SECTION C.3 UNINSURED MOTORISTS
COVERAGE (NON-STACKED) ......................40
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

SECTION C.4 UNDERINSURED
MOTORISTS COVERAGE (STACKED) .........47
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

PART D – COVERAGE FOR DAMAGE TO
YOUR AUTO .....................................................53
    Insuring Agreement
    Limited Transportation Expenses
    Exclusions
    Limit of Liability
    Payment of Loss
    Car Storage Coverage
    Loss Payable Clause
    No Benefit to Bailee
    Other Sources of Recovery
    Appraisal

PART E – GENERAL PROVISIONS ............62
    Bankruptcy
    Changes
    Fraud
    Legal Action Against Us
    Our Right to Recover Payment
    — Part A and Part D
    — Part C
    Payment of Premium
    Policy Period and Territory
    Termination
    Reinstatement of Policy With a Lapse
        in Coverage
    Structured Settlements
    Transfer of Your Interest in This Policy
    Two or More Auto Policies

Our Right to Re-compute Premium
Notice
Constitutionality Clause
Pennsylvania Notice

## ENDORSEMENTS

(Only those listed in the Declarations are effective on your policy)

1037-1  PENNSYLVANIA AMENDATORY ENDORSEMENT ...............73

1037-2  RENTAL REIMBURSEMENT / TRANSPORTATION EXPENSES.......74

1037-3  TOWING AND LABOR COSTS COVERAGE...........75

1037-6  CUSTOMIZING PARTS OR EQUIPMENT COVERAGE ...........76

1037-7  NAMED NON-OWNER COVERAGE ...........79
  Definitions
  Liability Coverage
  Uninsured Motorists Coverage
  Underinsured Motorists Coverage

1037-8  ADDITIONAL INSURED - LESSOR ...........82

1037-9  NAMED DRIVER EXCLUSION ENDORSEMENT ...........83

This list is not inclusive. There may be other endorsements attached to your policy.

**READ YOUR POLICY AND ALL ENDORSEMENTS TO YOUR POLICY CAREFULLY.**

# YOUR DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with any of the following duties is prejudicial to us:

A. We must be notified within 30 days, or as soon as practicable, of how, when and where the **accident** or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with **us** in the investigation, settlement or defense of any claim or suit.

2. Promptly send **us** copies of any notices or legal papers received in connection with the **accident** or loss.

3. Submit, as often as **we** reasonably require to medical exams by physicians **we** select. **We** will pay for these exams.

4. Allow **us** to take signed or recorded statements, including statements under oath outside the presence of other interested persons or parties, and answer all reasonable questions **we** may ask, when and as often as **we** may reasonably require.

5. Authorize **us** to obtain:
   a. Medical reports; and
   b. Other pertinent records.

6. Submit a proof of loss when required by **us**.

7. Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and their equipment from further loss. **We** will pay reasonable expenses incurred to do this.

8. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen or vandalized.

9. Permit **us** to inspect and appraise the damaged property before its repair or disposal.

C. A person seeking Extraordinary Medical Benefits Coverage under Section B.2. of Part B must submit proof, when required by **us**, that at least $100,000 of medical expenses has been incurred as the result of any one **accident** by an **insured**.

D. A person seeking Uninsured Motorists Coverage or Underinsured Motorists Coverage must also notify the police within 24 hours, or as soon as practicable, if a hit-and-run driver is involved.

E. A person seeking Underinsured Motorists Coverage must also promptly:
1. Send us copies of the legal papers if a suit is brought; and
2. Notify **us** in writing of a tentative settlement between the **insured** and the insurer of the **underinsured motor vehicle** and allow **us** 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such **underinsured motor vehicle**.

## PERSONAL AUTO POLICY AGREEMENT

**Your** written application, the **Declarations** page and this policy constitute the entire agreement. We will insure **you** for the coverages and limits of liability for which a premium is shown on the **Declarations** page of this policy. In return for payment of the premium and subject to all the terms of this policy, **we** agree with **you** as follows:

## DEFINITIONS
A. Throughout this policy, **you** and **your** refer to:
1. The named insured shown in the **Declarations**; and
2. The spouse if a resident of the same household.

2

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy but only until the earlier of:
a. The end of 30 days following the spouse's change of residency;
b. The effective date of another policy listing the spouse as a **named insured**; or
c. The end of the policy period.

B. **We**, **us** and **our** refer to the Company providing this insurance.
Other words and phrases are defined. They are in **boldface** when used.

C. **Accident** means a sudden, unexpected, and unintended occurrence. All **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **accident**.

D. **Actual Cash Value** means the fair and reasonable market value at the time of the loss based on vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and/or dealerships, less **depreciation** and/or **betterment**.

E. **After-market Parts** means replacement **auto** parts not made by the original **auto** manufacturer of the **auto** or by a manufacturer authorized by the original **auto** manufacturer.

F. **Auto** means a land motor vehicle with at least 4 wheels including:
1. A private passenger automobile; or
2. A private passenger pickup or private passenger van, for which no other insurance policy provides coverage, that:
a. Has a Gross Vehicle Weight Rating of 9,000 lbs. or less;

3

b. Is designed for use mainly on public roads; and

c. Is not used for the delivery or transportation of persons or goods and materials unless such use is:

   i. Incidental to **your business** of installing, maintaining or repairing furnishings or equipment; or

   ii. For farming or ranching.

G. **Betterment** means an improvement that adds value to an item.

H. **Bodily Injury** means bodily harm, sickness or disease, including death that results from bodily harm, sickness, or disease.

I. **Business** includes trade, profession or occupation.

J. **Declarations Page or Declarations** mean the document you receive from us listing:

1. The types of coverages you have selected;

2. The limit and/or deductible for each coverage;

3. The cost for each coverage;

4. The specified **autos** covered by this policy;

5. The types of coverage for each such **auto**; and

6. Other information applicable to this policy.

K. **Depreciation** means a decrease or loss of value caused by physical, technological, and/or location deterioration.

L. **Diminution of Value** means the difference in the **actual cash value** of **your** covered **auto** immediately before and after loss.

M. **Family member** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household even if temporarily living elsewhere. This includes a ward or foster child.

N. **Insured Resident** means a person living in **your** household, other than **you** or a **family member**. Any **insured resident** must be specifically identified on the

4

application or endorsed on the policy prior to a loss. **You** have fourteen (14) calendar days to report any new **insured resident**.

O. **Noneconomic loss** means pain and suffering and other nonmonetary detriment.

P. **Non-Owned Auto** means any **auto** that is not owned by **you**, an **insured resident**, or a **family member**.

Q. **Occupying** means:

1. **In**;

2. **Upon**; or

3. Getting in, on, out or off.

R. **Own or owned**, with respect to an **auto**, means:

1. Holding legal title to the **auto**;

2. Having legal possession of the **auto** that is subject to a written security agreement with an original term of six (6) months or more; or

3. Having legal possession of the **auto** that is leased to that person under a written agreement for a continuous period of six (6) months or more.

S. **Owner** means any person who, with respect to an **auto**:

1. Holds legal title to the **auto**;

2. Has legal possession of the **auto** that is leased to that person under a written agreement for a continuous period of six (6) months or more; or

3. Has legal possession of the **auto** that is subject to a written security agreement for a continuous period of six (6) months or more.

T. **Property damage** means physical injury to, destruction of or loss of use of tangible property.

U. **Serious injury** means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

V. **Trailer** means a vehicle designed to be pulled by an **auto**. It also means a farm wagon or farm implement while towed by an **auto**. A **trailer** does not include a

5

mobile home, travel trailer, or any vehicle that can be lived in or is self-propelled.

W. **Your covered auto** means:

1. Any **auto** that **you** or an **insured resident own** and is shown in the **Declarations** unless **you** have asked **us** to delete that vehicle from the policy;
2. An **additional auto**.
3. A **replacement auto**.
4. Any **trailer you own**.
5. Any **auto** or **trailer you** do not **own** while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

   This provision (W.5) does not apply to Coverage For Damage To Your Auto.

X. **Additional auto** means an **auto you** acquire during the policy period shown on the **Declarations** page, if:

1. **We** insure all **autos you own** or lease for a term of at least 6 months;
2. No other insurance policy provides coverage for that **auto**;
3. **You** pay **us** any additional premium required when due; and
4. The **additional auto** is an acceptable risk to **us** under **our** underwriting guidelines.

If **we** provide coverage for an **additional auto**, **we** will provide the broadest coverage **we** now provide for any **auto** shown in the **Declarations** for a period of fourteen (14) days after **you** become the **owner**. The **additional auto** will include physical damage coverage under Part D only if the **Declarations** indicate that Part D applies to any **auto** on the policy. **We** will not provide coverage after this fourteen

(14) day period, unless within this period **you** ask **us** to insure the **additional auto**. If **you** ask **us** to insure an **additional auto** after the fourteen (14) day period, any coverage **we** provide for an **additional auto** will begin at the time **you** request coverage. If **you** request coverage not already provided for any **auto** shown in the **Declarations** for the **additional auto** or increase **your** limits, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage or increase **your** limits.

Y. **Replacement Auto** means an **auto you** become the **owner** of if:

1. **You** acquire the **auto** during the policy period shown on the **Declarations** page;
2. The **auto** that **you** acquire replaces one shown on the **Declarations** page;
3. No other insurance policy provides coverage for that **auto**;
4. **You** pay **us** any additional premium required when due; and
5. The **replacement auto** is an acceptable risk to **us** under **our** underwriting guidelines.

If the **auto** that **you** acquire replaces one shown on the **Declarations** page, it will have the same coverage as the **auto** it replaces. **You** must ask **us** to insure a **replacement auto** within fourteen (14) days after **you** become the **owner** if **you** want to continue coverage under Part D. If **you** ask **us** to insure a **replacement auto** after this fourteen (14) day period, any coverage **we** provide under Part D for a **replacement auto** will begin at the time **you** request coverage. If **you** request coverage not already provided for any **auto** shown in the **Declarations** for the **replacement auto** or increase **your** limits, it will not become effective until after **you** ask **us** to add the coverage or increase **your** limits.

2. Throughout the policy, minimum limits refers to the following limits of liability as required by Pennsylvania law, to be provided under a policy of automobile liability insurance:

1. $15,000 for each person, subject to $30,000 for each **accident**, with respect to **bodily injury**; and

2. $5,000 for each **accident** with respect to **property damage**.

# PART A — LIABILITY COVERAGE

## INSURING AGREEMENT

A. We will pay compensatory damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto **accident**. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to **our** limit of liability, we will pay all defense costs we incur. **Our** duty to settle or defend ends when **our** limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy. We will not cover punitive or exemplary damages.

B. **Insured** as used in this Part means:

1. **You**, an **insured resident**, or any **family member** for the ownership, maintenance or use of **your covered auto**.

2. **You**, an **insured resident**, or any **family member** while operating a non-**owned auto** with the express or implied permission of the **owner**.

3. A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted. The person must

8

hold a valid driver's license at the time of loss and must not be a regular operator of **your covered auto**.

4. For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5. For any **auto** or trailer, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision (B.5.) applies only if the person or entity does not **own** or hire the **auto** or trailer.

## SUPPLEMENTARY PAYMENTS

In addition to **our** limit of liability, we will pay on behalf of an **insured**:

1. Up to $250 for the cost of bail bonds required because of an **accident**, including related traffic law violations. The **accident** must result in **bodily injury** or **property damage** covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend. We have no duty to purchase bonds in an amount exceeding **our** limit of liability.

3. Interest accruing after a judgment is entered in any suit we defend. **Our** duty to pay interest ends when we offer to pay that part of the judgment which does not exceed **our** limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings, trials, or any other proceedings at **our** request.

5. Other reasonable expenses incurred at **our** request.

9

6. Prejudgment interest awarded against the insured on the part of the judgment we pay. Any prejudgment interest awarded against the insured is subject to the applicable Pennsylvania Rules of Civil Procedure.

## EXCLUSIONS

A. We do not provide Liability Coverage for any insured:

1. Who intentionally causes **bodily injury** or **property damage**.

2. For **property damage** to property **owned** or being transported by that insured.

3. For **property damage** to property:
   a. Rented to;
   b. Used by; or
   c. In the care of;
   that insured.
   This exclusion (**A.3.**) does not apply to **property damage** to a residence or private garage.

4. For **bodily injury** to an employee or co-worker of that insured during the course of employment. This exclusion (**A.4.**) does not apply to **bodily injury** to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that insured's liability arising out of the ownership, maintenance, or use of a vehicle or trailer, including **your covered auto**, while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of newspapers, magazines, food, or any other products. This exclusion (**A.5.**) does not apply to a share-the-expense car pool or to a delivery by an insured as a volunteer.

6. While employed or otherwise engaged in the business of:
   a. Selling or leasing;
   b. Repairing;
   c. Servicing;

   d. Storing;
   e. Parking; or
   f. Towing;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (**A.6.**) does not apply to the ownership, maintenance or use of **your covered auto** by:
   a. **You**;
   b. An insured resident;
   c. Any **family member**; or
   d. Any partner, agent or employee of **you**, an insured resident or any **family member**.

7. Maintaining or using any vehicle while that insured is employed or otherwise engaged in any business (other than farming or ranching) not described in Exclusion **A.6**.
   This exclusion (**A.7.**) does not apply to the maintenance or use of an **auto** or **trailer** used with an **auto** if a business use surcharge is shown on the **Declarations page**.

8. For **bodily injury** or **property damage** for which that insured:
   a. Is an insured under a nuclear energy liability policy; or
   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.
   A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

9. For **bodily injury** or **property damage** assumed by an insured under any contract or agreement.

10. For bodily injury or property damage resulting from the operation of farm machinery.

11. For bodily injury or property damage arising from the operation of a vehicle by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply.

12. For bodily injury or property damage caused by any vehicle, including your covered auto, while used in practicing, participating, or preparing for any race, speed contest or performance contest.

13. For bodily injury to the owner of any non-owned auto when being used by or driven by you, an insured resident or a family member.

14. For bodily injury or property damage resulting from the use of a vehicle for snow removal.

15. For bodily injury or property damage sustained by an insured while occupying any vehicle located for use or being used as a residence or premises.

16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

a. Is under the minimum age to obtain a valid driver's license in the state where the vehicle is garaged;

b. Is under fifteen (15) years of age;

c. Does not have a valid drivers license; or

d. Has a suspended or revoked driver's license.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This exclusion (B.1.) does not apply to any trailer.

2. Any vehicle, other than your covered auto, which is:

a. Owned by you; or

b. Furnished or available for your regular use.

3. Any vehicle, other than your covered auto, which is:

a. Owned by any insured resident or family member; or

b. Furnished or available for the regular use of any insured resident or family member.

However, this exclusion (B.3.) does not apply to you while you are maintaining or occupying any vehicle which is:

a. Owned by an insured resident or family member; or

b. Furnished or available for the regular use of an insured resident or family member.

4. Any vehicle, including a trailer, rented for any business purpose.

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

The limit of liability shown in the **Declarations** for each accident for Property Damage Liability is **our** maximum limit of liability for all **property damage** resulting from any one auto **accident.** These limits of liability are the most **we** will pay regardless of the number of:

1. **Insureds;**
2. Claims made;
3. Vehicles or premiums shown in the **Declarations;** or
4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
2. Part C.1.– Uninsured Motorists Coverage (Non-Stacked); or
3. Part C.3. – Underinsured Motorists Coverage (Non-Stacked).

C. An **auto** and attached **trailer** are considered one **auto.** Therefore, **our** limits of liability will not be increased for any **accident** involving an **auto** which has an attached **trailer.**

**OUT OF STATE COVERAGE**

If an auto **accident** to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, **we** will interpret **your** policy for that **accident** as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the **Declarations, your** policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, **your** policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required. **You** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

**OTHER INSURANCE**

If there is other applicable liability insurance **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. Any insurance **we** provide for a vehicle **you** do not **own,** including any vehicle while used as a temporary substitute for **your covered auto,** shall be excess over any other collectible insurance.

# PART B - FIRST PARTY BENEFITS COVERAGE / EXTRAORDINARY MEDICAL BENEFITS COVERAGE

With respect to coverage provided by this Part B, the provisions of the policy apply unless modified by Part B.

BASIC FIRST PARTY BENEFITS – LIMITS OF LIABILITY - AS INDICATED IN THE DECLARATIONS

ADDED FIRST PARTY BENEFITS – LIMITS OF LIABILITY - APPLY INSTEAD OF THE BASIC FIRST PARTY BENEFIT AND COMBINATION FIRST PARTY BENEFITS ONLY AS INDICATED IN THE DECLARATIONS.

COMBINATION FIRST PARTY BENEFITS - LIMITS OF LIABILITY - APPLY INSTEAD OF THE BASIC FIRST PARTY BENEFIT AND ADDED FIRST PARTY BENEFITS ONLY AS INDICATED IN THE DECLARATIONS.

NOTE: IF ADDED FIRST PARTY BENEFITS OR COMBINATION FIRST PARTY BENEFITS ARE NOT SHOWN AS APPLICABLE IN THE DECLARATIONS, ONLY THE BASIC FIRST PARTY BENEFIT APPLIES.

## DEFINITIONS

The Definitions section is amended as follows:

A. The **Act** refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

B. The following definition is replaced:

Your covered auto means a motor vehicle.

1. To which Part A of this policy applies and for which a specific premium is charged; and

16

2. For which First Party Benefits Coverage required by the **Act** is maintained.

C. The following definition is added:

**Motor vehicle** means a self-propelled vehicle operated or designed for use upon public roads. However, **motor vehicle** does not include a vehicle operated:

1. By muscular power; or
2. On rails or tracks.

D. **Insured** as used in this section means:

1. **You** or any **family member**.
2. Any other person while:
   a. **Occupying your covered auto;** or
   b. Not **occupying** a **motor vehicle** if injured as a result of an accident in Pennsylvania involving **your covered auto.**

If **your covered auto** is parked and unoccupied it is not a **motor vehicle** involved in an **accident** unless it is parked in a manner which creates an unreasonable risk of injury.

# SECTION B.1 - FIRST PARTY BENEFITS COVERAGE

## INSURING AGREEMENT

A. BASIC FIRST PARTY BENEFIT

We will pay, in accordance with the **Act**, the Basic First Party Benefit to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle.**

Subject to the limit shown in the Declarations, the Basic First Party Benefit consists of:

**Medical Expenses.** Reasonable and necessary medical expenses incurred for an **insured's:**

1. Care;
2. Recovery; or
3. Rehabilitation.

17

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the accident causing **bodily injury**. However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional reasonable medical expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

**B. ADDED FIRST PARTY BENEFITS**

If the **Declarations** indicate that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of **the Act**. Subject to the limits shown in the **Declarations**, Added First Party Benefits consist of the following:

1. **Medical expenses** as described in the Basic First Party Benefit.
2. **Work Loss.**
   a. Loss of income. Up to 80% of gross income actually lost by an **insured** as a result of the **accident**.
   b. Reasonable expenses actually incurred to reduce loss of income by hiring:
      (1) Special help, thereby enabling an **insured** to work; or
      (2) A substitute to perform the work a self-employed **insured** would have performed.

However, **work loss** does not include:

a. Loss of expected income or expenses incurred for services performed after the death of the **insured**; or

b. Any loss of income, or expenses incurred for services performed.

3. **Funeral Expenses.** Funeral or burial expenses actually incurred if **bodily injury** causes an **insured's** death within 24 months from the date of the **accident**.
4. **Accidental Death.** A death benefit paid if **bodily injury** causes the death of you or any family member within 24 months from the date of the **accident**. We will pay accidental death to the executor or administrator of the deceased **insured's** estate. If there is no executor or administrator, the benefit shall be paid to:
   a. The deceased **insured's** surviving spouse; or
   b. If there is no surviving spouse, the deceased **insured's** surviving children; or
   c. If there is no surviving spouse or children to the deceased **insured's** estate.

**C. COMBINATION FIRST PARTY BENEFITS**

If the **Declarations** indicate that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefits to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of **the Act**. Subject to the limits shown in the **Declarations**, Combination First Party Benefits consist of the following, as described in the First Party Benefit and Added First Party Benefits:

1. **Medical expenses.**
2. **Work loss.**
3. **Funeral expenses.**
4. **Accidental death.**

## EXCLUSIONS

A. We do not provide First Party Benefits Coverage for **bodily injury** sustained by any **insured**:

1. While intentionally causing or attempting to cause **bodily injury** to himself or any other person. **We** will not pay accidental death on behalf of that **insured**.

2. While committing a felony.

3. While seeking to elude lawful apprehension or arrest by a law enforcement official.

4. While maintaining or using a **motor vehicle** knowingly converted by that **insured**. This Exclusion (A.4.) does not apply to:
   a. **You**; or
   b. Any **family member**;

5. Who, at the time of the **accident**, is:
   a. The owner of one or more registered **motor vehicles**, none of which have in effect the financial responsibility required by **the Act**; or
   b. **Occupying** a **motor vehicle owned** by that **insured** for which the financial responsibility required by **the Act** is not in effect.

6. Maintaining or using a **motor vehicle** while located for use as a residence or premises.

7. While **occupying** a:
   a. Recreational vehicle designed for use off public roads; or
   b. Motorcycle, moped or similar-type vehicle.

B. We do not provide First Party Benefits Coverage for **bodily injury**:

1. Sustained by a pedestrian if the **accident** occurs outside of Pennsylvania. This exclusion (B.1.) does not apply to:
   a. **You**; or
   b. Any **family member**.

20

2. Sustained by any person injured as a result of conduct within the course of **business** of repairing, servicing or otherwise maintaining **motor vehicles**. However, this exclusion does not apply if the conduct is off the **business** premises.

3. Caused by or as a consequence of:
   a. Discharge of a nuclear weapon (even if accidental);
   b. War (declared or undeclared);
   c. Civil war;
   d. Insurrection; or
   e. Rebellion or revolution.

4. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
   a. Nuclear reaction;
   b. Radiation; or
   c. Radioactive contamination.

## LIMIT OF LIABILITY

A. The limits of liability shown in the **Declarations** for the first party benefits that apply are the most **we** will pay to or for each **insured** as the result of any one **accident**, regardless of the number of:
1. Claims made;
2. Vehicles or premiums shown in the **Declarations**;
3. Vehicles involved in the **accident**; or
4. Insurers providing first party benefits.

B. If Combination First Party Benefits are afforded, **we** will make available at least the minimum limit required by **the Act** for the Basic First Party Benefit. This provision (B.) will not change **our** maximum limit of liability.

C. Any amount payable under this coverage shall be excess over any amounts:
1. Paid;
2. Payable; or
3. Required to be provided;
to an **insured** under any workers' compensation law or similar law.

21

## PRIORITIES OF POLICIES

A. We will pay first party benefits in accordance with the order of priorities set forth by **the Act**. We will not pay if there is another insurer at a higher level of priority. The **First** category listed below is the highest level of priority and the **Fourth** category is the lowest level of priority. The priority order is:

| | |
|---|---|
| **First** | The insurer providing benefits to the insured as the **named insured**. |
| **Second** | The insurer providing benefits to the insured as a family member or insured resident who is not a named insured under another policy providing coverage under **the Act**. |
| **Third** | The insurer of the motor vehicle which the insured is **occupying** at the time of the accident. |
| **Fourth** | The insurer of any motor vehicle involved in the accident if the insured is not:<br>a. **Occupying a motor vehicle; and**<br>b. Provided first party benefits under any other automobile policy. |

B. An unoccupied parked motor vehicle is not a motor vehicle involved in an **accident** unless it is parked in a manner which creates an unreasonable risk of injury.

1. If 2 or more policies have equal priority within the highest level applicable priority level:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contri-bution pro rata from any other insurer

22

for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the **Fourth** priority, proration shall be based on the number of involved motor vehicles.

2. If we are the insurer against whom the claim is first made, our payment to or for an insured will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Declarations.

3. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

## NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

## PART E - GENERAL PROVISIONS

Part E is amended as follows:

Our **Right To Recover Payment** provision does not apply.

## SECTION B.2 – EXTRAORDINARY MEDICAL BENEFITS COVERAGE

**THIS SECTION APPLIES ONLY IF EXTRAORDINARY MEDICAL BENEFITS COVERAGE IS INDICATED ON THE DECLARATIONS PAGE**

With respect to coverage provided by Section B.2., the provisions of Section B.1 - First Party Benefits Coverage apply unless modified by Section B.2.

**LIMITED BENEFITS**

THIS SECTION B.2 PROVIDES COVERAGE ONLY FOR MEDICAL EXPENSES.

23

## WARNING

"YOU" SHOULD BE AWARE THAT EXTRAORDINARY MEDICAL BENEFITS COVERAGE DOES NOT APPLY TO THE FIRST $100,000 OF MEDICAL EXPENSES INCURRED BY AN "INSURED". "YOU" CAN AVOID HAVING TO PAY SOME OF "YOUR" OWN MEDICAL BILLS BY PURCHASING ADDED FIRST PARTY BENEFITS COVERAGE WITH A $100,000 LIMIT OF LIABILITY FOR MEDICAL EXPENSES.

## EXTRAORDINARY MEDICAL BENEFITS COVERAGE

**INSURING AGREEMENT**
We will pay, in accordance with the Act, extraordinary medical benefits to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle.

Subject to the limit shown in the Declarations, extraordinary medical benefits consist of:

Medical Expenses. Reasonable and necessary medical expenses incurred for an insured's:
1. Care;
2. Recovery; or
3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized method of healing.

Regardless of whether you have purchased Basic, Added or Combination First Party Benefits Coverage under this policy, we will pay extraordinary medical benefits only after $100,000 of medical benefits has been incurred by any one insured as a result of any one accident.

24

## EXCLUSIONS

The following exclusion is added:
We do not provide Extraordinary Medical Benefits Coverage for the first $100,000 of medical expenses incurred by an insured as a result of an accident.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for Extraordinary Medical Benefits Coverage is the most we will pay to or for each insured as the result of any one accident, regardless of the number of:
1. Claims made;
2. Vehicles or premiums shown in the Declarations;
3. Vehicles involved in the accident; or
4. Insurers providing extraordinary medical benefits.

Extraordinary medical benefits are subject to an annual limit of $50,000 for each insured. However, this limit does not apply to medical expenses incurred within 18 months from the date the insured incurs $100,000 of medical expenses as a result of the accident.

B. Any amounts payable under this coverage shall be excess over any amounts available to an insured for medical expenses under Basic, Added or Combination First Party Benefits Coverage.

C. If an insured is eligible for benefits under both this coverage and the Catastrophic Loss Trust, the total recovery under Extraordinary Medical Benefits Coverage and the Catastrophic Loss Trust Fund combined shall not exceed $1,000,000. In no event will the amount payable under Extraordinary Medical Benefits Coverage exceed the limit of liability shown in the Declarations.

D. Any amounts payable under this coverage shall be excess over any amount:
1. Paid;

25

**PART C – UNINSURED / UNDERINSURED MOTORISTS COVERAGE**

## SECTION C.1 UNINSURED MOTORISTS COVERAGE - (NON-STACKED)

This Section Applies Only If Uninsured Motorists Coverage (Non-Stacked) Is Indicated On The Declarations Page.

**INSURING AGREEMENT**

A. We will pay compensatory damages which an **insured** is legally entitled to recover from the **owner** or operator of an uninsured motor vehicle because of **bodily injury**:

1. Sustained by an **insured**; and
2. Caused by an **accident**.

The **owner's** or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

No judgment for damages arising out of a suit brought against the **owner** or operator of an uninsured **motor vehicle** is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. **Insured** as used in this Part means:

1. **You**, an **insured resident** or any **family member**.
2. Any other person **occupying your covered auto** up to the minimum limits

of liability specified by the financial responsibility law of Pennsylvania.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

C. Uninsured **motor vehicle** means a land motor vehicle or trailer of any type:

1. To which no **bodily injury** liability bond or policy applies at the time of the **accident**.
2. Which is a hit-and-run vehicle whose operator or **owner** cannot be identified and which hits or which causes an **accident** resulting in **bodily injury** without hitting:
   a. **You**, an **insured resident** or any **family member**;
   b. A vehicle which **you**, an **insured resident** or any **family member** are **occupying**; or
   c. **Your covered auto**.
   
   If there is no physical contact with the hit-and-run vehicle, the facts of the **accident** must be proved.

3. To which a **bodily injury** liability bond or policy applies at the time of the **accident** but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes:
      (1) Insolvent within six years of the date of the **accident**; or
      (2) Involved in insolvency proceedings.

However, uninsured **motor vehicle** does not include any vehicle or equipment:

1. **Owned** by or furnished for the regular use of **you**, an **insured resident** or any **family member**.
2. **Owned** or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

2. Payable; or
3. Required to be provided;

to an **insured** under any workers' compensation law or similar law.

3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:
1. By **you** while **occupying**, or when struck by, any motor vehicle **you own** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
2. By an **insured** resident or family **member**:
   a. Who owns an auto, while **occupying**, or when struck by, any motor vehicle owned by **you**, an **insured** resident, or any family **member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
   b. Who does not **own** an auto, while **occupying**, or when struck by, any motor vehicle **you own** which is insured for this coverage on a primary basis under any other policy.
3. While using any motor vehicle without the express or implied permission of the **owner**, or using a motor vehicle outside the scope of permission granted by the **owner**.

B. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:
1. If that **insured** or the legal representative settles the **bodily injury** claim and such settlement prejudices **our** right to recover payment.
2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This Exclusion (B.2.)

does not apply to a share-the-expense car pool.
3. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines. This Exclusion (B.3.) does not apply to a delivery by an **insured** as a volunteer.

C. We do not provide Uninsured Motorists Coverage for noneconomic loss sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **accident** involving an uninsured **motor vehicle**, unless the **bodily injury** sustained is a **serious injury**. This Exclusion (C.) does not apply if that **insured** is injured while **occupying** a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the **Declarations** for each person for Uninsured Motorists Coverage is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**. Subject to this limit for each person, the limit of liability shown in the **Declarations** for each **accident** for Uninsured Motorists Coverage is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident**.

This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. If bodily injury is sustained by an insured other than you, an insured resident or any family member:
1. That part of the limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.
2. Subject to this limit for each accident, that part of the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
This Section (B.) will not change our limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;

3. Part C.3. – Underinsured Motorists Coverage (Non-Stacked); or
4. Part C.4. – Underinsured Motorists Coverage (Stacked).

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible. This includes all payments made to an insured's attorney either directly or as part of the payment made to the insured.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
a. Workers' compensation law; or
b. Disability benefits law.

OTHER INSURANCE
If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this Part:
The following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
|---|---|
| Second | The policy affording Uninsured Motorists Coverage to the insured as a named insured, an insured resident or any family member. |

1. When there is applicable insurance available under the First Priority.
a. The limit of liability applicable to the vehicle the insured was occupying, under the policy in the First priority, shall first be exhausted; and

b. The maximum recovery under all policies in the **Second** priority may equal but not exceed the highest applicable limit of liability for Uninsured Motorists Coverage for any one vehicle under any one policy providing coverage to **you**, an **insured resident** or any **family member**.

2. When there is no applicable insurance available under the **First** priority, the maximum recovery under all policies in the **Second** priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

## ARBITRATION

A. If **we** and an **insured** do not agree:
1. Whether that **insured** is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that **insured**;
from the **owner** or operator of an **uninsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.
   Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of **our** limit of liability for this coverage.
B. Each party will:
1. Pay the expenses it incurs; and

32

2. Bear the expenses of the third arbitrator equally.
C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the three arbitrators will be binding.

## SECTION C.2 UNINSURED MOTORISTS COVERAGE - (STACKED)

**This Section Applies Only If Uninsured Motorists Coverage (Stacked) Is Indicated On The Declarations Page**

## INSURING AGREEMENT

A. **We** will pay compensatory damages which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** because of **bodily injury**:
1. Sustained by an **insured**; and
2. Caused by an **accident**.
The **owner's** or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.
No judgment for damages arising out of a suit brought against the **owner** or operator of an **uninsured motor vehicle** is binding on **us** unless **we**:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect **our** interests in the suit.
B. **Insured** as used in this Part means:
1. **You**, an **insured resident** or any **family member**.
2. Any other person occupying your **covered auto** up to the minimum limits

33

of liability specified by the financial responsibility law of Pennsylvania.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

C. Uninsured motor vehicle means a land motor vehicle or **trailer** of any type:
1. To which no **bodily injury** liability bond or policy applies at the time of the **accident.**
2. Which is a hit-and-run vehicle whose operator or **owner** cannot be identified and which hits or which causes an **accident** resulting in **bodily injury** without hitting:
   a. **You,** an **insured resident,** or any **family member;**
   b. A vehicle which **you,** an **insured resident,** or any **family member** are **occupying;** or
   c. **Your covered auto.**
   If there is no contact with the hit-and-run vehicle, the facts of the **accident** must be proved.
3. To which a **bodily injury** liability bond or policy applies at the time of the **accident** but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes:
      (1) Insolvent within six years of the date of the **accident;** or
      (2) Involved in insolvency proceedings.

However, **uninsured motor vehicle** does not include any vehicle or equipment:
1. Owned by or furnished for the regular use of **you,** an **insured resident** or any **family member.**
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

**EXCLUSIONS**
A. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:
1. By **you** while **occupying,** or when struck by, any motor vehicle **you own** which is not insured for this coverage. This includes a **trailer** of any type used with that vehicle.
2. By an **insured resident** or **family member** who owns an auto, while **occupying,** or when struck by, any motor vehicle owned by **you,** an **insured resident,** or any **family member** which is not insured for this coverage. This includes a **trailer** of any type used with that vehicle.
3. While using any motor vehicle without the express or implied permission of the **owner,** or using a motor vehicle outside the scope of permission granted by the **owner.**

B. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured:**
1. If that **insured** or the legal representative settles the **bodily injury** claim and such settlement prejudices **our** right to recover payment.
2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.
3. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines.

This Exclusion (B.3.) does not apply to a delivery by an **insured** as a volunteer.

C. **We** do not provide Uninsured Motorists Coverage for **noneconomic loss** sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **accident** involving an **uninsured motor vehicle**, unless the **bodily injury** sustained is a **serious injury**.
This Exclusion (C.) does not apply if that **insured** is injured while **occupying** a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

E. **We** do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**
A. If **bodily injury** is sustained in an **accident** by **you**, an **insured resident**, or any **family member**:
1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any such **accident** is the sum of the limits of liability shown in the **Declarations** for each person for Uninsured Motorists Coverage.
2. Subject to the maximum limit for each person described in A.1. above, **our** maximum limit of liability for all damages arising out of **bodily injury** resulting from any one **accident** is the sum of the limits of liability shown in the **Declarations** for each **accident** for Uninsured Motorists Coverage.

36

3. Subject to the maximum limits of liability set forth in A.1. and A.2. above, the most we will pay for **bodily injury** sustained in such **accident** by an **insured** other than **you**, an **insured resident**, or any **family member** is that part of the each person or each **accident** limit of liability shown in the **Declarations** applicable to the vehicle that the **insured** was **occupying** at the time of the **accident**, that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania.
The maximum limit of liability is the most we will pay regardless of the number of:
1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**.

B. If **bodily injury** is sustained by any **insured** other than **you**, an **insured resident**, or any **family member** in an **accident** in which none of **you**, an **insured resident**, or any **family member** sustain bodily injury:
1. That part of the limit of liability shown in the **Declarations** for each person for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**.
2. Subject to this limit for each person, that part of the limit of liability shown in the **Declarations** for each **accident** for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is **our** maximum

37

limit of liability for all damages for **bodily injury** resulting from any one **accident**.

This is the most we will pay regardless of the number of:
1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**.

This Section (B.) will not change **our** limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.3 – Underinsured Motorists Coverage (Non-Stacked); or
4. Part C.4 – Underinsured Motorists Coverage (Stacked).

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible. This includes all payments made to an **insured's** attorney either directly or as part of the payment made to the **insured**.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

**OTHER INSURANCE**
If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this Part:

The following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the **insured** was **occupying** at the time of the **accident**. |
| Second | The policy affording Uninsured Motorists Coverage to the **insured** as a named **insured**, an **insured** resident or any **family member**. |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**ARBITRATION**
A. If **we** and an **insured** do not agree:
1. Whether that **insured** is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that **insured**; from the **owner** or operator of an **uninsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either they may request that selection be made by a judge of a court having jurisdiction. The two arbitrators shall have no authority to award an amount in excess of **our** limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and

   2. Bear the expenses of the third arbitrator equally.
C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

## SECTION C.3 UNDERINSURED MOTORISTS COVERAGE (NON-STACKED)

**This Section Applies Only If Underinsured Motorists Coverage (Non-Stacked) Is Indicated On The Declarations Page.** With respect to the coverage provided by Section C.3, the provisions of the policy apply unless modified by Section C.3.

**INSURING AGREEMENT**
A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:
1. Sustained by an **insured**; and
2. Caused by an **accident**.
The **owner's** or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**.
**We** will pay under this coverage only if 1. or 2. below applies:
1. The limits of liability under any **bodily injury** liability bonds or policies applicable to the **underinsured motor vehicle** have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and **we**:

   a. Have been given prompt written notice of such tentative settlement; and
   b. Advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.
No judgment for damages arising out of a suit brought against the owner or operator of an **underinsured motor vehicle** is binding on **us** unless **we**:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect **our** interests in the suit.
B. **Insured** as used in this Part means:
   1. **You**, an insured resident or any family member.
   2. Any other person occupying **your covered auto** up to the **minimum limits** of liability specified by the financial responsibility law of Pennsylvania.
   3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by person described in 1. or 2. above.
C. **Underinsured motor vehicle** means a land motor vehicle or trailer of any type to which a **bodily injury** liability bond or policy applies at the time of the accident but the available limits for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.
However, **underinsured motor vehicle** does not include any vehicle or equipment:
1. For which liability coverage is provided under Part **A** of this policy.
2. Which is an **uninsured motor vehicle**.
3. Operated on rails or crawler treads.

# EXCLUSIONS

A. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained:

1. By **you** while **occupying**, or when struck by, any motor vehicle **you** own which is not insured for this coverage under this policy. This includes a **trailer** of any type used with that vehicle.

2. By an **insured** resident or family member:

   a. Who owns an **auto**, while **occupying**, or when struck by, any motor vehicle owned by **you**, an **insured** resident, or any **family member** which is not insured for this coverage under this policy. This includes a **trailer** of any type used with that vehicle.

   b. Who does not own an **auto**, while **occupying**, or when struck by, any motor vehicle **you** own which is **insured** for this coverage on a primary basis under any other policy.

3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.

2. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines.

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.

42

This Exclusion (B.2.) does not apply to a delivery by an **insured** as a volunteer.

C. We do not provide Underinsured Motorists Coverage for **noneconomic loss** sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **underinsured motor vehicle**, unless the **bodily injury** sustained is a **serious injury**. This Exclusion (C.) does not apply if that **insured** is injured while **occupying** a motor vehicle insured under a commercial motor vehicle insurance policy;

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

# LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**. Subject to this limit for each person, the limit of liability shown in the Declarations for each **accident** for Underinsured Motorists Coverage is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident**. This is the most **we** will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the **accident**.

43

B. If **bodily injury** is sustained by an **insured** other than **you**, an **insured resident**, or any **family member**:
   1. That part of the limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**.
   2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each **accident** for Underinsured Motorists Coverage that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident**.

This is the most **we** will pay regardless of the number of:
   1. **Insureds**;
   2. Claims made;
   3. Vehicles or premiums shown in the **Declarations**; or
   4. Vehicles involved in the **accident**.
This Section (B.) will not change **our** limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
   1. Part A – Liability;
   2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
   3. Part C.1. – Uninsured Motorists Coverage; or
   4. Part C.2. – Uninsured Motorists Coverage (Stacked).

44

D. **We** will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible.
E. **We** will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
   1. Workers' compensation law; or
   2. Disability benefits law.

**OTHER INSURANCE**
If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this policy:
The following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the **insured** was **occupying** at the time of the **accident**. |
| --- | --- |
| Second | The policy affording Underinsured Motorists Coverage to the **insured** as a **named insured**, an **insured resident** or any **family member**. |

1. When there is applicable insurance available under the **First Priority**:
   a. The limit of liability applicable to the vehicle the **insured** was **occupying**, under the policy in the First priority, shall first be exhausted; and
   b. The maximum recovery under all policies in the **Second** priority may equal but not exceed the highest applicable limit of liability for Underinsured Motorists Coverage for any one vehicle under any one policy providing coverage to **you**, an **insured resident** or any **family member**.

45

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the **Second** priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

## ARBITRATION

A. If **we** and an **insured** do not agree:
   1. Whether that **insured** is legally entitled to recover damages; or
   2. As to the amount of the damages which are recoverable by that **insured**;
   from the **owner** or operator of an **underinsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.
   Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of **our** limit of liability for this coverage.

B. Each party will:
   1. Pay the expenses it incurs; and
   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

46

# SECTION C.4 UNDERINSURED MOTORISTS COVERAGE (STACKED)

**This Section Applies Only If Underinsured Motorists Coverage (Stacked) Is Indicated On The Declarations Page**

With respect to the coverage provided by Section C.4, the provisions of the policy apply unless modified by Section C.4.

## INSURING AGREEMENT

A. **We** will pay compensatory damages which an **insured** is legally entitled to recover from the **owner** or operator of an **underinsured motor vehicle** because of **bodily injury**:
   1. Sustained by an **insured**; and
   2. Caused by an **accident**.
   The **owner's** or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**.
   **We** will pay under this coverage only if 1. or 2. below applies:
   1. The limits of liability under any **bodily injury** liability bonds or policies applicable to the **underinsured motor vehicle** have been exhausted by payment of judgments or settlements; or
   2. A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and **we**:
      a. Have been given prompt written notice of such tentative settlement; and
      b. Advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.
   No judgment for damages arising out of a suit brought against the **owner** or operator of an **underinsured motor vehicle** is binding on **us** unless **we**:

47

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. **Insured** as used in this Part means:
   1. **You**, an **insured resident** or any **family member.**
   2. Any other person **occupying your covered auto** up to the minimum limits of liability specified by the financial responsibility law of Pennsylvania.
   3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

C. **Underinsured motor vehicle** means a land motor vehicle or **trailer** of any type to which a **bodily injury** liability bond or policy applies at the time of the accident but the available limits for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.
   However, **underinsured motor vehicle** does not include any vehicle or equipment:
   1. For which liability coverage is provided under Part A of this policy.
   2. Which is an **uninsured motor vehicle.**
   3. Operated on rails or crawler treads.
   4. Designed mainly for use off public roads while not on public roads.
   5. While located for use as a residence or premises.

**EXCLUSIONS**
A. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained:
   1. By **you** while **occupying,** or when struck by, any motor vehicle **you** own which is not insured for this coverage.

This includes a **trailer** of any type used with that vehicle.
   2. By an **insured resident** or **family member** who owns an auto, while **occupying,** or when struck by, any motor vehicle owned by **you,** an **insured resident,** or any **family member** which is not insured for this coverage. This includes a **trailer** of any type used with that vehicle.
   3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained by any **insured:**
   1. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.
   2. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines. This Exclusion (B.2.) does not apply to a delivery by an **insured** as a volunteer.

C. We do not provide Underinsured Motorists Coverage for **noneconomic loss** sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **accident** involving an **underinsured motor vehicle** unless the **bodily injury** sustained is a **serious injury.** This Exclusion (C.), does not apply if that **insured** is injured while **occupying** a commercial motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

LIMIT OF LIABILITY

A. If **bodily injury** is sustained in an **accident** by **you**, an **insured** resident, or any **family member**:

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any such **accident** is the sum of the limits of liability shown in the **Declarations** for each person for Underinsured Motorists Coverage.

2. Subject to the maximum limit for each person described in A.1. above, **our** maximum limit of liability for all damages arising out of **bodily injury** resulting from any one **accident** is the sum of the limits of liability shown in the **Declarations** for each **accident** for Underinsured Motorists Coverage.

3. Subject to the maximum limits of liability set forth in A.1. and A.2. above, the most we will pay for **bodily injury** sustained in such **accident** by an **insured** other **you**, an **insured** resident, or any **family member** is that part of the each person or each **accident** limit of liability shown in the **Declarations** applicable to the vehicle that the **insured** was occupying at the time of the **accident**, that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania.

The maximum limit of liability is the most we will pay regardless of the number of:
1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**.

B. If **bodily injury** is sustained by any **insured** other than **you**, an **insured** resident, or any **family member** in an **accident** in which none of **you**, an **insured** resident, or any **family member** sustain **bodily injury**:

1. That part of the limit of liability shown in the **Declarations** for each person for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**.

2. Subject to this limit for each person, that part of the limit of liability shown in the **Declarations** for each **accident** for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident**.

This Section (B.) will not change **our** limit of liability.

This is the most we will pay regardless of the number of:
1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage:
1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.1.– Uninsured Motorists Coverage (Non-Stacked); or
4. Part C.2.– Uninsured Motorists Coverage (Stacked).

D. **We** will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible.

E. **We** will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
   1. Workers' compensation law; or
   2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this Part:

The following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the **insured** was **occupying** at the time of the **accident**. |
|---|---|
| Second | The policy affording Underinsured Motorists Coverage to the **insured** as a **named insured**, an **insured** resident or any **family member**. |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority.

The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**ARBITRATION**

A. If **we** and an **insured** do not agree:
   1. Whether that **insured** is legally entitled to recover damages; or
   2. As to the amount of the damages which are recoverable by that **insured**;

from the **owner** or operator of an **underinsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of **our** limit of liability for this coverage.

B. Each party will:
   1. Pay the expenses it incurs; and
   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

A. **We** will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including original manufacturer permanently installed equipment, minus any applicable deductible shown in the **Declarations**. If loss to more than one **your covered auto** or **non-owned auto** results from the same **collision**, only the highest applicable deductible will apply. **We** will pay for loss to **your covered auto** caused by:
   1. Other than **collision** only if the **Declarations** indicate that Other Than Collision coverage is provided for that **auto**.

2. **Collision** only if the **Declarations** indicate that Collision coverage is provided for that **auto**.

If there is a loss to a **non-owned auto**, we will provide the broadest coverage applicable to any **your covered auto** shown in the **Declarations**.

B. **Collision** means the upset of **your covered auto** or a **non-owned auto** or their impact with another vehicle or object.

Loss caused by the following is considered other than collision:

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a collision, you may elect to have it considered a loss caused by collision.

C. Customizing parts or equipment means permanently installed or attached equipment, parts, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed.

D. **Non-owned auto** means:

1. Any **auto** or trailer not owned by or furnished or available for the regular use of you, an **insured resident** or any **family member** while in the custody of or being operated by you, an **insured resident** or any **family member**; or

2. Any **auto** or trailer you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

54

**LIMITED TRANSPORTATION EXPENSES**

In addition, we will reimburse **you** up to $20 per day, to a maximum of $300, for transportation expenses incurred by **you**. This applies only in the event of the total theft of **your covered auto**. We will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft is reported to the police; and

2. Ending when **your covered auto** is returned to use or we pay for its loss.

We will not pay for the cost of transportation incurred by an **insured** if there is a theft of only a trailer.

**EXCLUSIONS**
We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while it is used to carry persons or property for compensation or a fee, including, but not limited to, delivery of newspapers, magazines, food, or any other products. This exclusion (1) does not apply to a share-the-expense car pool or to a delivery by an **insured** as a volunteer.

2. Damage due and confined to:

   a. Wear and tear;
   b. Freezing;
   c. Mechanical or electrical breakdown or failure;
   d. Road damage to tires; or
   e. Manufacturer defects.

   This exclusion (2.) does not apply if the damage results from the total theft of your **covered auto** or any **non-owned auto**.

3. Loss due to or as a consequence of:

   a. Radioactive contamination;
   b. Discharge of any nuclear weapon (even if accidental);
   c. War (declared or undeclared);
   d. Civil war;
   e. Insurrection; or
   f. Rebellion or revolution.

55

4. Loss to equipment, devices, accessories, and any other personal effects which are not permanently installed or attached by brackets or bolts. This includes, but is not limited to:

a. tapes, compact discs, cassettes, and other recording or recorded media;

b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, or other recording or recorded media;

c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions;

d. radios, stereos, CB radios, telephones, two-way mobile radios, scanners, televisions, video or audio cassette/DVD recorders, or personal computers; and

e. any compact disc systems, navigation systems, internet access systems, or video entertainment systems.

5. Loss of value in excess of $500 to any customizing parts or equipment unless the value of the equipment has been reported to us, scheduled, and a premium has been paid for customizing parts or equipment coverage.

6. Loss to your covered auto, any non-owned auto, or trailer due to destruction or confiscation by governmental or civil authorities because you, an insured resident or any family member engaged in illegal activities.

7. Loss to:

a. A camper body or motor home; or

b. Facilities or equipment used with a trailer, camper body or motor home. Facilities or equipment include but are not limited to:

(1) Cooking, dining, plumbing or refrig-eration facilities;

(2) Awnings or cabanas; or

(3) Any other facilities or equipment used with a trailer, camper body, or motor home.

This exclusion (7.) does not apply if you have identified and scheduled a value for this equipment and paid premium for an endorsement to add coverage for customizing parts or equipment.

8. Loss to any non-owned auto when used by you, an insured resident or any family member without the owner's express or implied permission.

9. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. Special carpeting or insulation;

b. Furniture or bars;

c. Height-extending roofs including pop up roofs, raised roofs, bubble domes, and bubble windows;

d. Custom murals, paintwork, decals or other graphics; or

e. Captain chairs, swivel chairs, or tables.

This exclusion (9.) does not apply to a cap, cover or bed liner in or upon any your covered auto which is a pickup. This exclusion does not apply if you have identified and scheduled a value for this equipment and paid premium for an endorsement to add coverage for customizing parts or equipment.

10. Loss to any non-owned auto being maintained or used by any person while employed or otherwise engaged in the business of:

a. Selling or leasing;

b. Repairing;

c. Servicing;

d. Storing;

e. Parking; or

f. Towing;

vehicles designed for use on public highways. This includes road testing and delivery.

11. Loss while **your covered auto** or any **non-owned auto** is used in practicing, participating, or preparing for any race, speed contest or performance contest.

12. Loss to, or loss of use of, a **non-owned auto** rented by:
   a. **You**;
   b. An **insured resident**; or
   c. Any **family member**;
   if a rental vehicle company is precluded from recovering such loss or loss of use, from you, an **insured resident**, or any **family member**, pursuant to the provisions of any applicable rental agreement or state law.

13. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion 10. This exclusion (13.) does not apply to the maintenance or use by you, an **insured resident**, or any **family member** of a **non-owned auto**, which is an auto or trailer.

14. Loss to **your covered auto** or any **non-owned auto** due to or resulting from intentional acts committed by you, an **insured resident**, or a **family member**, or by anyone at **your** direction. This exclusion (14.) does not apply to an innocent co-insured who did not cooperate in or contribute to the creation of the loss.

15. Loss to **your covered auto** or any **non-owned auto** caused while you, an **insured resident** or any **family member** are involved in any unlawful activity (other than a traffic violation) or attempting to flee or fleeing from any law enforcement officer or agent.

16. Loss resulting from the use of **your covered auto** for snow removal.

17. Loss to paint or discoloration of paint resulting from acid rain, smog, salt, tree sap, or animal or bird droppings unless such loss is a direct result of a **collision** or vandalism.

18. Loss caused by the theft or conversion of **your covered auto** by a person to whom **you** have voluntarily entrusted **your covered auto**.

19. Loss to **your covered auto**, **non-owned auto** or trailer for diminution of value.

20. Loss to **your covered auto** or any **non-owned auto** when it is driven, operated or used by an individual with the owner's permission if the owner knows that the operator:
   a. Is under the minimum age to obtain a valid driver's license in the state where the vehicle is garaged;
   b. Is under fifteen (15) years of age;
   c. Does not have a valid driver's license; or
   d. Has a suspended or revoked driver's license.

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:
   1. **Actual cash value** of the stolen or damaged property at the time of loss; or
   2. Amount necessary to repair or replace **your covered auto**, **non-owned auto**, or covered equipment with other property of like kind and quality including, but not limited to, after-market parts.

   However, the most we will pay for loss to:
   1. Any trailer is $500.
   2. Non-scheduled customizing parts or equipment is $500.

B. In the event of a total loss, an adjustment for:
   1. **Depreciation and physical condition;** and
   2. **Retained salvage value;** will be made in determining **actual cash value**.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

D. If coverage applies to a vehicle you do not own, our liability is limited to the highest actual cash value of the highest-valued your covered auto for which coverage under this Part has been purchased.

**PAYMENT OF LOSS**
We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

A. You; or

B. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**CAR STORAGE COVERAGE**
We will pay up to a reasonable and customary daily rate for the cost of storage of your covered auto in the event of a loss to your covered auto for which coverage under this Part is provided. We will pay no more than $400 total for the cost of storage of your covered auto under this section.

**LOSS PAYABLE CLAUSE**
Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. We will not pay for any loss caused by conversion, embezzlement, secretion, fraud or omissions by you or anyone acting on your behalf. In addition, we will not pay a loss payee for any loss where fraud, misrepresentation, omission, concealment or intentional damage has been committed by or at the direction of an insured, family member, or insured resident. If we have to pay the loss payee for a loss not covered

under this policy, we will be subrogated to the loss payee's rights of recovery against you. This will not affect the loss payee's right to recover the full amount of its claim. The loss payee must assign us its interest.

We reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations. Any return premium owed to you will be based on the effective date of cancellation used to give advance notice to the loss payee. When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

**NO BENEFIT TO BAILEE**
This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**
If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a non-owned auto or any vehicle used as a temporary substitute for your covered auto shall be excess over any other collectible source of recovery including, but not limited to:

A. Any coverage provided by the owner of the non-owned auto or any vehicle used as a temporary substitute for your covered auto;

B. Any other applicable physical damage insurance;

C. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

# PART E - GENERAL PROVISIONS

## BANKRUPTCY

Bankruptcy or insolvency of the insured shall not relieve us of any obligations under this policy.

## CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;
2. Operators using insured vehicles;
3. The place of principal garaging of insured vehicles;
4. Coverage, deductible or limits.

62

---

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our filed rates.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or
2. An Amendatory Endorsement.

## FRAUD

A. Your policy was issued in reliance on the information you provided on your insurance application. We may void coverage under this policy if you have knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct at the time application was made or in connection with a claim.

B. If any representation contained in any notification of change or endorsement request is false, misleading, or materially affects the acceptance or rating of the risk by us, by either direct misrepresentation, omission, concealment of facts, or incorrect statements, this policy will be void from the effective date of the requested change.

C. We do not provide coverage for any Insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy. This provision shall also apply to misstatements of use and omissions of

63

fact. However, we will provide coverage to an insured for damages sustained by any person who has not made fraudulent statements or engaged in fraudulent conduct if such damages result from an accident which is otherwise covered by this policy.

D. If we are not permitted to void this policy, any first-party claims will be reduced by the amount of any additional premium owed to us. Any payments made by us as the result of your fraud or misrepresentation may be recovered from you, or from any payments due or made to you under any first-party coverage provided by this policy.

**LEGAL ACTION AGAINST US**

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:
1. We agree in writing that the insured has an obligation to pay; or
2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or entity has any right under this policy to bring us into any action to determine the liability of an insured.

**OUR RIGHT TO RECOVER PAYMENT – Applies to Part A – Liability and Part D – Coverage for Damage to Your Auto**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.

However, our rights in this Paragraph (A.) do not apply under Part D, against any person using your covered auto with an insured's express or implied permission

64

and within the scope of the permission granted.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment less reasonable attorneys' fees, costs and expenses incurred by that person in collecting our share of the recovery.

**OUR RIGHT TO RECOVER PAYMENT – Applies to Part C only**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.

However, our rights do not apply under Paragraph (A.) with respect to Underinsured Motorists Coverage (Sections C.3. and C.4.) if we:
1. Have been given prompt written notice of a tentative settlement between an insured and the insurer of an underinsured motor vehicle, and
2. Fail to advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification:
1. That payment will be separate from any amount the insured is entitled to recover under the provisions of Underinsured Motorists Coverage; and
2. We also have a right to recover the advanced payment.

65

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment. However, any reimbursement due to us shall be reduced by our pro rata share of any reasonable and necessary costs and expenses, including deposition costs, witness fees and attorney's fees, incurred in bringing the claim.

PAYMENT OF PREMIUM
A. This insurance coverage is conditional upon payment of premium. Payment of your initial premium by check, draft or other instrument is not considered payment until it is honored upon presentment. If your initial premium payment is by check, draft, or any remittance other than cash, coverage under this policy may be voidable at our election if the check, draft or remittance is not honored upon presentment.
B. If you make a premium payment with a check and the check is returned to us because of insufficient funds, a closed account or a stop payment, a service charge will be added to your account balance.
C. The premium stated in the Declarations is the initial premium for this policy. On each renewal, continuation or anniversary of the effective date of this policy, the premium shall be computed by us in accordance with our filed rates.
D. If you owe us any outstanding premium balances on your expiring, expired or cancelled policy, any moneys received by us will be applied first to pay the oldest outstanding balance.

66

POLICY PERIOD AND TERRITORY
A. This policy applies only to accidents and losses which occur:
1. During the policy period as shown on the Declarations; and
2. Within the policy territory.
B. The policy territory is:
1. The United States of America, its territories, or possessions; or
2. Canada.
This policy also applies to loss to, or accidents involving, your covered auto while being transported between their ports.

TERMINATION
A. Cancellation
This policy may be cancelled during the policy period as follows:
1. The named insured shown in the Declarations may cancel by:
a. Returning this policy to us; or
b. Giving us advance written notice of the future date cancellation is to take effect.
2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:
a. At least 15 days notice of cancel-lation:
(1) If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;
(2) For nonpayment of premium; or
(3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

67

b. At least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

B. **Nonrenewal**

If we decide not to renew or continue this policy, **we** will mail notice to the **named insured** shown in the **Declarations** at the address shown in this policy:

1. At least 15 days notice before the end of the policy period.

   a. For nonpayment of premium; or

   b. If the driver's license of the **named insured** shown in the **Declarations** has been suspended or revoked after the effective date if this policy has been in effect less than one year, or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

2. At least 60 days notice before the end of the policy period in all other cases. However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

C. **Automatic Termination**

If **we** offer to renew or continue and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted our offer.

D. **Other Termination Provisions**

1. **We** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, **you** may be entitled to a premium refund. If the premium refund is $10.00 or less, no refund will be sent unless **you** specifically request a refund. If **you** owe us

68

$10.00 or less, **we** will waive the amount outstanding. However, making or offering to make the refund is not a condition of cancellation. If **you** or **we** cancel **your** policy and a premium refund is owed to **you**, **you** will receive the refund on a pro-rata basis. If **your** policy is cancelled for nonpayment of premium and a refund is owed to **you**, **you** will receive the refund on a pro-rata basis minus the cancellation fee.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**REINSTATEMENT OF POLICY WITH A LAPSE IN COVERAGE**

This section only applies if reinstatements with a lapse in coverage are available in your state.

A. If this policy is cancelled for nonpayment of premium, we will reinstate the policy with a lapse in coverage, subject to underwriting approval, if payment is received within 20 days after the cancellation effective date.

B. For the purpose of this section, payment is considered the amount indicated that must be paid immediately on the past due payment notice.

C. If you pay your payment through electronic means, reinstatement of your coverage will be effective the date and time your payment is received.

D. If you mail your payment, reinstatement of your coverage will be effective at 12:01 A.M. on the day after your payment is postmarked. In the event the postmark is not present or is illegible, reinstatement of your coverage will be effective at 12:01 A.M. on the date your payment is received by us.

E. There will be a lapse in coverage from the cancellation date to the date and time of reinstatement.

69

F. If the consideration accepted by us as payment for the reinstatement is in the form of a check or draft and the bank on which the check or draft is drawn dishonors it upon presentation, the reinstatement is void as of its inception.

G. If this policy (or any renewal thereof) is cancelled because of nonpayment of premium after any reinstatement, we reserve the right to reinstate or to not reinstate and return unearned premium.

H. If this policy is reinstated, you will be charged a fee for reinstatement as allowed by your state law.

STRUCTURED SETTLEMENTS
If payment of medical expenses under Section B.2. of Part B in the form of a structured settlement will be.
1. Cost effective for us, and
2. In the best interest of an insured, we and the insured may make an agreement, about the timing and amount of payments under this coverage, which is mutually satisfactory. This agreement may include annuities or other long-term payment arrangements.

TRANSFER OF YOUR INTEREST IN THIS POLICY
A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:
1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and
2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your covered auto.

B. Coverage will only be provided until the end of the policy period.

C. If a named insured shown in the Declarations terminates their marital relationship, we will continue to provide coverage for the former spouse of the named insured. Coverage applies only:
1. If we are notified of the termination of the marital relationship;
2. If the former spouse was a resident of the same household immediately prior to the termination of the marital relationship; and
3. For the lesser of 30 days or until the end of the policy period.

TWO OR MORE AUTO POLICIES
A. If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

B. This provision does not apply to Part C2 – Uninsured Motorists Coverage (Stacked) or Part C4 – Underinsured Motorists Coverage (Stacked).

C. No one will be entitled to receive duplicate payments for the same elements of loss under Part C2 – Uninsured Motorists Coverage (Stacked) or Part C4 – Underinsured Motorists Coverage (Stacked).

OUR RIGHT TO RE-COMPUTE PREMIUM
We established the premium for this policy based on the statements you made in the application for insurance. We have the right to re-compute the premium if we later obtain information which affects the premium we charged.

NOTICE
Your notice to our authorized agent shall be deemed to be notice to us.

## CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

## PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;
2. Consultation or advice; or
3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. If any acts or omissions of the insurance

72

Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

IN WITNESS Whereof, we have caused this policy to be executed and attested.

Bruce Arneson, President

William Lockhorn, Chairman

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-1 APPEARS ON THE POLICY DECLARATIONS

## PENNSYLVANIA AMENDATORY ENDORSEMENT

This endorsement amends your policy as follows:

I. PART A – LIABILITY COVERAGE is amended as follows:
A. The following exclusion is added:
We do not provide Liability Coverage for any insured for bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle by any resident, including a family member, of your household who is not listed on the Declarations page as a driver or operator.
B. The following provision (D) is added to the Limit of Liability section of PART A:
D. Regardless of the limits of liability shown in the Declarations, the

73

limits of liability for **bodily injury** and property damage afforded by this policy to an insured who is both a regular user of **your covered auto** and is not a resident of **your** household other than:

1. **You**; or
2. An insured resident, or
3. Any **family member**;

shall not exceed the minimum limits for bodily injury or property damage.

1037-1

II. PART D – COVERAGE FOR DAMAGE TO YOUR AUTO is amended as follows:

The following exclusion is added:

**We** will not pay for loss to **your covered auto** while being driven, maintained or used by any person who is a resident of **your** household and is not listed on the Declarations page as a driver or operator.

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-2 APPEARS ON THE POLICY DECLARATIONS

RENTAL REIMBURSEMENT / TRANSPORTATION EXPENSES

In consideration of the premium charged and paid, **we** will pay for:

A. Temporary transportation expenses incurred by **you**, an **insured resident** or any **family member** in the event of loss to **your covered auto**. **We** will pay for such expenses if the loss is caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for any **your covered auto**.

2. **Collision** only if the **Declarations** indicate that Collision Coverage is provided for any **your covered auto**.

74

B. Loss of use expenses for which **you** or an insured resident become legally responsible in the event of loss to a **non-owned auto**. **We** will pay for loss of use expenses if the loss is caused by:

1. Other than **collision** only if the **Declarations** indicate that Other Than Collision Coverage is provided for any **your covered auto**.

2. **Collision** only if the **Declarations** indicate that Collision Coverage is provided for any **your covered auto**.

C. **We** will pay only expenses beginning when the **auto** is withdrawn from use for more than 24 hours. Our payment will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto**.

D. The limit of liability shall not exceed the limit shown for this coverage in the **Declarations**. The total payment under this endorsement shall not exceed the **actual cash value** of **your covered auto** or **non-owned auto** at the time of loss. **We** will pay only if **you**, an **insured resident** or any **family member** rent an **auto** from a licensed rental car agency.

1037-2 Includes copyrighted materials from Insurance Services Office, Inc. with its permission

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-3 APPEARS ON THE POLICY DECLARATIONS

TOWING AND LABOR COSTS COVERAGE

ISO PP 03 03 04 86

**We** will pay towing and labor costs incurred each time **your covered auto** or any **non-owned auto** is disabled, up to the amount shown in the **Declarations** as applicable to that vehicle. If a **non-owned auto** is disabled,

75

we will provide the broadest towing and labor costs coverage applicable to any **your covered auto** shown in the **Declarations. We** will only pay for labor performed at the place of disablement.

1037-3 (ISO PP 03 03 04 86) Copyright, Insurance Services Office, Inc. 1985, 1992

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-6 APPEARS ON THE POLICY DECLARATIONS

## CUSTOMIZING PARTS OR EQUIPMENT COVERAGE
### (ADDITIONAL EQUIPMENT)

If the **Declarations** page shows a specific premium charged for Customizing Parts or Equipment Coverage, **we** will pay for direct and accidental loss to identified and scheduled **customizing parts or equipment.** This coverage is in addition to the $500 afforded under Part D for non-scheduled **customizing parts or equipment.** This coverage applies only if the equipment is permanently installed or attached to **your covered auto** or **non-owned auto** at the time of loss and is caused by:

1. **Other than collision** only if the **Declarations** page indicates that Other Than Collision Coverage is provided for that **auto.**

2. **Collision** only if the **Declarations** page indicates that Collision Coverage is provided for that **auto.**

As used in this endorsement, **customizing parts or equipment** means permanently installed or attached equipment, parts, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed. Equipment installed or alterations made at a conversion facility to

**your covered auto** or any **non-owned auto** is not considered original manufacturer installed and must be identified and scheduled for this coverage to apply.

**Customizing parts or equipment** include but are not limited to:

1. Electronic equipment that receives or transmits audio, visual or data signals and is not designed solely for the reproduction of sound and any accessories used with such equipment.

2. Awnings, cabanas, cooking, dining, plumbing or refrigeration facilities, and any other facilities or equipment designed and used to provide additional living facilities.

3. Custom furnishings or equipment including:
   a. Special carpeting or insulation;
   b. Furniture or bars;
   c. Height-extending roofs including pop up roofs, raised roofs, bubble domes, and bubble windows;
   d. Custom murals, paintwork, decals or other graphics;
   e. Captain chairs, swivel chairs, or tables; or
   f. Custom chroming or gold plating.

4. Custom wheels, tires or spinners.

5. Body, engine, exhaust or suspension enhancers.

6. Sun roof, moon roof, T-bar roof, or landau roof.

7. Custom grilles, louvers, side pipes, running boards, air dams, hood scoops or spoilers.

8. Satellite tracking devices if not permanently installed by the original manufacturer or their authorized representative.

9. Radios, stereos, CB radios, telephones, two-way mobile radios, scanners, televisions, video or audio cassette/DVD recorders, or personal computers.

10. Any compact disc systems, Internet access systems, or video entertainment systems.

11. Any ground effects package or suspension lowering or raising equipment.
12. Winches, anti-roll or anti-sway bars.
13. Any continental kit.

In addition, the provisions of the policy apply except:

A. Exclusion 4, of Part D - Coverage For Damage to Your Auto does not apply to the extent that coverage is provided under this endorsement for audio, visual and data electronic equipment.

B. Exclusion 7 and 9 of Part D - Coverage For Damage To Your Auto does not apply to coverage provided by this endorsement.

C. The following exclusion is added:
We will not pay for loss to:
a. Clothing or luggage;
b. Business or office equipment;
c. Articles which are sales samples or used in exhibitions.

PART D – LIMIT OF LIABILITY is amended as follows for coverage provided by this endorsement:

LIMIT OF LIABILITY
A. is deleted in its entirety and replaced with the following:
A. Our limit of liability for loss to customizing parts or equipment will be the lesser of:
1. The declared value of the scheduled customizing parts or equipment shown on the Declarations page;
2. The actual cash value of the stolen or damaged property; or
3. The amount necessary to repair or replace the customizing parts or equipment with other property of like kind and quality including, but not limited to, after-market parts.

The following sections are added to the LIMIT OF LIABILITY section in PART D:

---

E. Our payment for loss will be reduced by any applicable deductible shown in the Declarations.

F. If loss to more than one of your covered autos results from the same collision, only the highest applicable deductible will apply.

1037-6  Includes copyrighted materials from Insurance Services Office, Inc. with its permission.

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-7 APPEARS ON THE POLICY DECLARATIONS

NAMED NON-OWNER COVERAGE

With respect to individuals and coverages described in the Declarations, the provisions of the policy apply unless modified by this endorsement.

I. DEFINITIONS
The Definitions Section is amended as follows:
The definition of your covered auto is replaced by the following:
Your covered auto means any auto on the date you become the owner.
This provision applies only:
A. if you acquire the auto during the policy period; and
B. For 14 days after you become the owner.
This insurance does not apply if other insurance applies with respect to any newly acquired autos.

II. PART A - LIABILITY COVERAGE
Part A is amended as follows:
A. The definition of insured is amended by deleting references to Insured resident and family member.
Insured means you while operating

any non-owned auto or trailer with the express or implied permission of the owner.

B. The **EXCLUSIONS** Section is amended as follows:

Exclusion B.2. is replaced by the following:

**We** do not provide Liability Coverage for the ownership, maintenance or use of any vehicle, other than **your covered auto**, which is **owned by you**.

C. The Out of State Coverage provision is replaced by the following:

**OUT OF STATE COVERAGE**

If an auto **accident** to which this policy applies occurs in any state or province other than where **you** reside, **we** will interpret **your** policy for that **accident** as follows:

1. If the state or province has:
   a. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the **Declarations**, **your** policy will provide the higher specified limit.
   b. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, **your** policy will provide at least the required minimum amounts and types of coverage.
2. No one will be entitled to duplicate payments for the same elements of loss.

III. **PART C.1 & C.2 – UNINSURED MOTORISTS COVERAGE**
Parts C.1 and C.2 are amended as follows:

A. The definition of **insured** is amended by deleting references to **insured resident** and family member.
**Insured** means **you**.

B. Part 2. of the definition of **uninsured motor vehicle** is replaced with the following:
**Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an **accident** resulting in **bodily injury** without hitting:
   a. **You;**
   b. A vehicle which **you** are **occupying;**
   c. **Your covered auto;** or

If there is no physical contact with the hit-and-run vehicle, the facts of the **accident** must be proved.

IV. **PART C.3 & C.4 – UNDERINSURED MOTORISTS COVERAGE**
Part C.3 and C.4 is amended as follows:

A. The definition of **insured** is amended by deleting references to **insured resident** and family member.
**Insured** means **you**.

1037-7 Includes copyrighted materials from Insurance Services Office, Inc. with its permission.

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-8 APPEARS ON THE POLICY DECLARATIONS

## ADDITIONAL INSURED - LESSOR

Any liability and any required no-fault coverages afforded by this policy for your leased auto also apply to the lessor named in the Declarations as an additional insured. This insurance is subject to the following additional provisions:

A. We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:
1. You, an insured resident, or any family member; or
2. Any other person except the lessor or any employee or agent of the lessor using your leased auto.

B. Your leased auto means:
1. An auto shown in the Declarations which you or an insured resident lease for a continuous period of at least six months under a written agreement which requires you or an insured resident to provide primary insurance for the lessor; and
2. Any substitute or replacement auto furnished by the lessor named in the Declarations.

C. If we terminate this policy, notice will also be mailed to the lessor.

D. The lessor is not responsible for payment of premiums.

E. The designation of the lessor as an additional insured shall not operate to increase our limits of liability.

1037-8 Includes copyrighted materials from Insurance Services Office, Inc. with its permission

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-9 APPEARS ON THE POLICY DECLARATIONS

## NAMED DRIVER EXCLUSION ENDORSEMENT

If you have asked us on your application (Form U-2 on the application) to exclude any person from coverage under this policy, then we will not pay damages, expenses or loss arising out of the maintenance or use of any auto or trailer by the excluded driver whether or not such maintenance or use was with the express or implied permission of the named insured. This includes any claim for damages made against you, an insured resident, family member or any other person or entity that is liable for an accident arising out of the operation of any auto by the excluded driver. This also includes any claim for damages for any negligence, which may be imputed by law to you, an insured resident, or family member arising out of the maintenance, operation or use of a motor vehicle by the excluded person.

The provisions of this Named Driver Exclusion Endorsement shall remain in effect for the term of the policy and for each renewal, reinstatement, substitute, modified, replacement or amended policy, unless discontinued by us.

1037-9

Form 1037     Pennsylvania (06/10)

Form 1037

Pennsylvania (06/10)



# EXHIBIT "2"

11/04/2014 12:52 FAX                                                    0001/0008

 **OMNI INSURANCE COMPANY**
**2018 POWERS FERRY ROAD**
**SUITE 400**
**ATLANTA, GA 30339**

APPLICATION FOR PRIVATE PASSENGER AUTO INSURANCE

| APPLICANT NAME AND ADDRESS | PRODUCER |
|---|---|
| SHAMEKA RENEE LAMAR | OREGON INSTANT AUTO (1000053279) |
| 2545 W SILVER ST | 2653 S 8TH ST |
| PHILADELPHIA, PA 19132 | PHILADELPHIA, PA 19148 |
| Home: 215-667-4949 | 215-755-8045 |
| | Producer Name: ROBERT L PALUMBO 357175 |

| PREVIOUS ADDRESS (if less than 5 Years) | POLICY #: 4140872 |
|---|---|
| | POLICY EFFECTIVE: |
| | September 1, 2012 to September 1, 2013 |

**APPLICANT INFORMATION**

| First | Middle | Last | Suffix | Birth Date | Marital Status | Sex | SSN |
|---|---|---|---|---|---|---|---|
| SHAMEKA | RENEE | LAMAR | | 08/17/1980 | Sngl w/ cust of kids | Female | 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 |

List all persons over 14 years of age who are residents of the same household, LICENSED OR NOT.

| Name | Relationship | Excluded | License State | License Number | Date Licensed |
|---|---|---|---|---|---|
| SHAMEKA RENEE LAMAR | Self | No | PA | 25387713 | 08/01/2000 |

**EMPLOYMENT INFORMATION**

| Applicant | Employer | |
|---|---|---|
| SHAMEKA RENEE LAMAR | | |
| | Occupation | UNEMPLOYED |
| Work Phone: | Years in Current Occupation | |
| | Years with Current Employer | |
| | Years with Previous Employer | |

**VEHICLES**    [ NO ] - NAMED NON-OWNER POLICY? (If "Yes", complete Named Non-Owner Automobile Endorsement)

| VEH | VIN | Year  Make and Model | Body Style | Symbol | Odometer |
|---|---|---|---|---|---|
| 1 | 3GNEC13T13G139408 | 2003 Chevrolet AVALANCHE 1500 BASE/Z66/Z71 | Utility Vehicle - Two Wheel Drive 4 Door | 13 | |

**VEHICLES (Cont.)**

| VEH | Vehicle Use | Damaged | Anti-Theft | Restraint System |
|---|---|---|---|---|
| 1 | Pleasure | No | Antitheft Device Installed | Double Airbag |

**VEHICLE RATING**

| VEH | Garaging Address (if different) | State Registered | Territory | Rate Class | Points |
|---|---|---|---|---|---|
| 1 | | | 1 | SF32 | 3 |

**ACCIDENT / CONVICTION POINTS - PAST 35 MONTHS**

| Name | Date | Location Description | Points |
|---|---|---|---|
| 1. SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold LOADED FROM CLUE • PD Paid $1,798.00 | 3 |

**COVERAGES**

The applicant elects the following tort option Limited Tort.
Appropriate Tort Option selection notice must be signed by the applicant and attached to this application.

| | |
|---|---|
| Bodily Injury Liability | 15,000 per person / 30,000 per occurrence |
| Property Damage Liability | 5,000 per occurrence |
| Medical Payments | 5,000 per person |
| Income Loss Protection | Rejected |
| Funeral Benefits | Rejected |
| Accidental Death | Rejected |

11/04/2014 12:53 FAX                                                    @0002/0008

| | |
|---|---|
| Extraordinary Medical Expenses | Rejected |
| Uninsured Motorist BI | Rejected |
| Stack benefits | NO |
| Underinsured Motorist BI | Rejected |
| Stack benefits | NO |
| | Veh 1 |
| Collision Deductible | Rejected |
| Comprehensive Deductible | Rejected |
| Rental Reimbursement | Rejected |
| Towing and Labor | Rejected |
| Additional Custom Parts and Equipment | Rejected |

**DISCOUNTS AND SURCHARGES**

| | |
|---|---|
| Vehicle 1 | Double Airbag |

**PREMIUMS**

| Coverage | Veh 1 |
|---|---|
| Bodily Injury Liability Premium | $696.24 |
| Property Damage Liability Premium | $376.30 |
| Medical Payments Premium | $392.12 |
| Total ($1,464.66) | $1,464.66 |
| Deposit | $150.00 |
| Pay Plan 43 | 12 Month Extended |
| Rating Tier | K |
| Policy Tier | K |
| | |
| Deposit Fee | $12.00 |
| Policy Fee | $15.00 |

**PRIOR COVERAGE - 6 months continuous prior coverage with no more than 30 days lapse**

| Name of Latest Carrier | Policy Number | Termination Date | Plan Coverage | Years | Policy Written Through Your Agency |
|---|---|---|---|---|---|
| | | | No | | No |

**HOMEOWNER - Proof will be required to receive the discount.**

| | |
|---|---|
| Residency Status | Rent |
| Residency Type | Other |
| Acceptable proof of home ownership includes mortgage coupon/statement, property tax records, or deed. | |

**GENERAL INFORMATION -- During the past three years, has the applicant, any household member, or any driver:**

| | | | | |
|---|---|---|---|---|
| Date agent last inspected vehicle | | If yes, explain | | |
| Any other auto insurance in household? (Include any provided by an employer) | NO | Has any person in the household had a license suspension or revocation in the last 36 months? | | NO |
| If yes, explain | | If yes, explain | | |
| Had a Comprehensive claim of $1,450 or more in last 36 months? | NO | Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)? | | NO |
| If yes, how many | | Do all drivers reside in the named insured's household? | | YES |
| Any coverage declined, cancelled, or non-renewed during the last 3 years? | NO | If no, explain | | |
| If yes, explain | | Are all vehicles garaged in Pennsylvania for at least 10 months per year? | | YES |
| Have health problems or physical, mental or emotional handicap or disability that would impair driving ability? | NO | If no, explain | | |
| If yes, explain | | Are there any occasional operators not rated as previously described? | | NO |
| Has vehicle ever been salvaged? | NO | If yes, explain | | |
| If yes, explain | | Are there any other cars in the household or available for regular use not previously described? | | NO |
| Any vehicle "Gray Market" (i.e. not manufactured for original sale in the U.S.)? | NO | If yes, explain | | |
| Is vehicle titled in any name other than the named insured? | NO | Does any listed vehicle have unrepaired damage? | | NO |
| If yes, who & why? | | If yes, describe | | |
| Any vehicles listed on this application used for hire (taxi, limo, etc.), commercial or business purposes, delivery (pizza, newspaper, etc.), or used in the course of scope of your employment? | NO | Has any operator been licensed in the U.S. or Canada for less than 3 years (except ages 16-19)? | | NO |
| | | If yes, explain | | |

**BINDER/SIGNATURE**

| INSURANCE BINDER | | IF THE "BINDER" BOX TO THE LEFT IS COMPLETED, THE FOLLOWING CONDITIONS APPLY: THIS COMPANY BINDS THE KIND(S) OF INSURANCE STIPULATED ON THIS APPLICATION. THIS INSURANCE IS SUBJECT TO THE TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY(IES) IN CURRENT USE BY THE COMPANY. |
|---|---|---|
| EFFECTIVE DATE 09/01/2012 | EXPIRATION DATE 10/01/2012 | |

11/04/2014 12:54 FAX                                                          ☑ 0003/0008

| TIME<br>10:59 AM ET | ☑ 12:01 AM | THIS BINDER MAY BE CANCELLED BY THE INSURED BY SURRENDER OF THIS BINDER OR BY WRITTEN NOTICE TO THE COMPANY STATING WHEN CANCELLATION WILL BE EFFECTIVE. THIS BINDER MAY BE CANCELLED BY THE COMPANY BY NOTICE TO THE INSURED IN ACCORDANCE WITH THE POLICY CONDITIONS. THIS BINDER IS CANCELLED WHEN REPLACED BY A POLICY. IF THIS BINDER IS NOT REPLACED BY A POLICY, THE COMPANY IS ENTITLED TO CHARGE A PREMIUM FOR THE BINDER ACCORDING TO THE RULES AND RATES IN USE BY THE COMPANY. THE QUOTED PREMIUM IS SUBJECT TO VERIFICATION AND ADJUSTMENT, WHEN NECESSARY, BY THE COMPANY. |
|---|---|---|
| | ☐ NOON | |
| ☐ COVERAGE IS NOT BOUND | | |

**NOTICE OF INSURANCE INFORMATION PRACTICES**
I UNDERSTAND THAT TO CALCULATE AN ACCURATE PRICE FOR MY INSURANCE, THE COMPANY MAY OBTAIN INFORMATION FROM THIRD PARTIES, SUCH AS CONSUMER REPORTING AGENCIES THAT PROVIDE DRIVING, CLAIMS AND CREDIT HISTORIES FOR YOU AND ALL OTHERS LISTED ON THIS APPLICATION. THE COMPANY MAY USE A CREDIT-BASED INSURANCE SCORE BASED ON THE INFORMATION CONTAINED IN THE CREDIT HISTORY. THE COMPANY OR ITS AFFILIATES MAY OBTAIN NEW OR UPDATED INFORMATION TO CALCULATE MY RENEWAL PREMIUM OR SERVICE MY INSURANCE. I MAY ACCESS INFORMATION ABOUT ME AND CORRECT IF INACCURATE. IN SOME CASES, THE LAW PERMITS THE COMPANY TO DISCLOSE THE INFORMATION IT COLLECTS WITHOUT AUTHORIZATION. HOWEVER, THE COMPANY WILL NOT SHARE PERSONAL INFORMATION WITH NONAFFILIATED COMPANIES FOR THEIR MARKETING PURPOSES WITHOUT CONSENT. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. I UNDERSTAND THE DECISION TO REQUEST A CREDIT REPORT IS NOT BASED ON RACE, COLOR, CREED, MARITAL STATUS, SEX, OR NATIONAL ORIGIN. I UNDERSTAND I SHALL BE ADVISED HOW TO OBTAIN A COPY OF MY REPORT IF AN ADVERSE UNDERWRITING DECISION OCCURS.

**FEES**
I ACKNOWLEDGE THAT THE ELECTRONIC FUNDS TRANSFER (EFT) PAYMENT PLAN INCLUDES A $5.00 SERVICE FEE PER PAYMENT. I ACKNOWLEDGE THAT ALL OTHER PAYMENT PLANS INCLUDE A $12.00 NON-STANDARD INSTALLMENT FEE PER PAYMENT. I UNDERSTAND AND AGREE TO PAY A CREDIT CARD FEE OF $3.00 FOR ANY PAYMENT MADE TO THE COMPANY WITH A CREDIT CARD OR DEBIT CARD. I ALSO AGREE TO PAY A $12.00 LATE PAYMENT FEE DURING THE POLICY TERM AND EACH RENEWAL POLICY TERM WHEN A PAYMENT IS RECEIVED BY THE COMPANY AFTER THE PREMIUM DUE DATE. I UNDERSTAND AND AGREE TO PAY A REINSTATEMENT FEE OF $15.00 EACH TIME MY CANCELLED POLICY IS REINSTATED. REINSTATEMENT IS NOT A WAIVER OF RIGHTS BY THE COMPANY AND DOES NOT IMPOSE FURTHER DUTIES ON THE COMPANY AS TO FUTURE CANCELLATIONS. REINSTATEMENT WILL NOT TAKE AFFECT IF THE CHECK OR CREDIT CARD I SUBMIT FOR REINSTATEMENT IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON. I UNDERSTAND AND AGREE TO PAY A FINAL CANCELLATION FEE OF $50.00 IF THE COMPANY CANCELS THIS POLICY DUE TO MY FAILURE TO PAY ANY PREMIUM WHEN DUE. I UNDERSTAND AND AGREE TO PAY A $30.00 FEE FOR EVERY PAYMENT RETURNED TO THE COMPANY FOR NON-SUFFICIENT FUNDS (NSF). I AGREE TO PAY A $15.00 POLICY FEE TO BE COLLECTED IN THE INITIAL PAYMENT FOR EACH POLICY TERM. I UNDERSTAND THAT MY POLICY WILL BE CANCELLED IF I AM UNWILLING TO PAY ANY OF THESE FEES.

**IN NO EVENT SHALL COVERAGE BE EFFECTIVE PRIOR TO THE DATE
AND HOUR OF COMPLETION OF THIS APPLICATION**

**APPLICANT'S STATEMENT**
I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY. I also agree to pay any surcharges applicable under Company rules that are necessitated by inaccurate or incomplete statements. I understand that my policy can be cancelled if I am willing to pay the additional premium.
Note: In connection with your request for a premium quotation; (1) we may obtain consumer reports or personal or privileged information from third parties; (2) in certain circumstances, such information, as well as other personal or privileged information subsequently collected by us, may be disclosed to third parties without your authorization, but it is not our practice to do so; (3) you have the right to access and correct all personal information collected; and (4) at your request we will: (a) confirm whether a consumer report was requested and, if so, provide the name and address of the consumer reporting agency that furnished it; and (b) provide you more detailed information regarding our collection, use, and disclosure of personal information, and your rights to access and correct such information. I also acknowledge that the Company may obtain consumer report in the future for an update, renewal or extension of this insurance.

I agree that if I pay my initial premium by check, the coverage afforded by this policy is conditional on the check being honored by the bank when presented for payment. If the check in not honored, Omni shall be deemed not to have accepted the check and this policy shall be void from inception.

Insurance coverage is conditional upon the payment of premium and payment by electronic funds transfer, check, draft, debit card, credit card or other remittance is not considered payment until it is presented to and paid by the drawee financial institution. IF THE TRANSFER, CHECK, DEBIT CARD OR CREDIT CARD OR OTHER REMITTANCE I SUBMIT WITH THIS APPLICATION IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON, COVERAGE WILL NOT TAKE EFFECT; The Company shall be deemed not to have accepted the payment and this policy shall be void.

I certify that:
• I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR or OCCASIONAL basis. This includes children away from home or away at school. I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
• Each vehicle listed in this application is garaged at the zip code provided in this application for my principle residence for ten (10) or more months each year and the garaging address of all listed auto(s) is the Pennsylvania address listed on this application.
• I have reported any driver that commutes out of state for work or school one or more times per week to the Company and agree to notify the Company prior to any such future commuting.
• I have reported any business or commercial use of my auto(s) to the Company and agree to notify the Company prior to any future business use. I understand that the Company does not cover losses if my vehicle is being used for business or commercial purposes and these purposes are not disclosed prior to the loss.
• If I have requested coverage for damages to my auto(s), I have reported to the Company all unrepaired damage or glass breakage.
• The Custom or Additional Equipment I want covered has been declared and is listed on this application.

The premium for the coverages itemized on this application are based upon rates in excess of standard rates in the Commonwealth of Pennsylvania Automobile Insurance Plan. I understand that discounts are available for drivers who meet the requirements for restraint systems, anti-theft devices, and driver improvement courses.

9/1/2012 11:13:53 AM                                                          Page 3 of 13

11/04/2014 12:55 FAX                                                                    ☎0004/0008

Regardless of the limits of liability shown on the Declarations page, the limits of liability afforded by this policy to anyone you give permission to drive the insured auto, who is not listed on the Declarations page prior to the loss, will not exceed the minimum statutory coverage required under Pennsylvania law.

**FRAUD**
The insurance policy is issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family members" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

To the extent that we make payments to you under this policy and our subsequent investigation reveals your involvement in fraud or misrepresentation in the presentation of a claim, you must indemnify the Company for all payments made for that claim.

Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

APPLICANT'S SIGNATURE (applies to the sections listed below)
• Fees
• Applicant's Statement
• Fraud

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. I understand that the coverage selection and limit choices indicated here or in any state supplement and I further declare that I will notify Omni Indemnity Company by phone, e-mail or in writing if any information on this application changes while the policy, or any renewal thereof, is in force. By signing below, I agree that this application becomes a part of my policy, is a legal document, and acknowledge that I have read the warnings and statements listed on this application.

_____                          9/1/2012
Signature of Applicant POLICY #: **4140872**                               Date

## AGENT'S SIGNATURE

I certify that to the best of my knowledge, all information contained herein is correct; the statements made herein are those of the applicant and all questions have been answered by the applicant. I have explained all coverages and options to the applicant; and the applicant and I are retaining a duplicate signed copy hereof. I am legally qualified to submit this application on behalf of the applicant.

                                                        1000053279          9/1/2012
_____
Signature of Agent                                      Agent               Date
                                                        Number

OMNI PA APP (04/11)

9/1/2012 11:13:53 AM                                                       Page 4 of 13

11/04/2014 12:55 FAX                                                                 ☑ 0005/0008

## IMPORTANT NOTICE

**Benefits and Limits Notice**

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of 75 Pa. C.S.A. Section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

You may be eligible for discounts mandated by Act 6 of 1990: (1) on first party benefits coverage if your car is equipped with a passive restraint system; (2) on comprehensive coverage if your car is equipped with a passive antitheft device; or (3) if named insured is 55 or older and has successfully completed a motor vehicle driver improvement course approved by PennDOT. See your agent for details.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

APPLICANT'S SIGNATURE POLICY #: <u>4140872</u>:                           DATE:

_Shameka Lamar_                                                      _9/1/2012_

SHAMEKA RENEE LAMAR
OMNI PA BENNOT (08/08)

9/1/2012 11:13:53 AM                                                          Page 6 of 13

11/04/2014 12:56 FAX                                                                    Ⓛ0006/0008

# TORT OPTION SELECTION NOTICE TO NAMED INSUREDS

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The minimum motor vehicle insurance coverage and limits mandated by the Commonwealth are: Bodily Injury Liability - $15,000 for one person in any one accident and $30,000 for two or more persons in any one accident; Property Damage Liability - $5,000 per accident; and Medical Benefits - $5,000. The annual premium for these basic coverages are presented below.

A. "Limited Tort" Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies.

The annual premium for basic coverage as required by law under this "Limited tort" option is $1,464.66. Additional coverages under this option are available at additional cost.

B. "Full Tort" Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers.

The annual premium for basic coverage as required by law under the "Full Tort" option is $2,190.23. Additional coverage under this option is available at additional cost.

C. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

D. If you wish to choose the "Limited tort" option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full tort" premium.

I WISH TO CHOOSE THE "LIMITED TORT" OPTION DESCRIBED IN PARAGRAPH A.

APPLICANT'S SIGNATURE   POLICY #: <u>4140872</u>:                    DATE:

_Shameka Lamar_                                        _9/1/2012_

SHAMEKA RENEE LAMAR

E. If you wish to choose the "Full Tort" option described in paragraph B, you may sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full Tort" premium.

I wish to choose the "Full Tort" option described in paragraph B:

APPLICANT'S SIGNATURE   POLICY #: <u>4140872</u>:                    DATE:

SHAMEKA RENEE LAMAR

OMNI PA TORTOPT (08/08)

11/04/2014 12:57 FAX                                                                    ☒0007/0008

# UNINSURED MOTORIST COVERAGE
## REJECTION OF UNINSURED MOTORIST PROTECTION

Uninsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who fails to have any insurance coverage.

Uninsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want uninsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: <u>4140872</u>:                      DATE:

_____                          9/1/2012

SHAMEKA RENEE LAMAR
OMNI PA UMREJ (08/08)

11/04/2014 12:58 FAX                                                  ⌀0008/0008

## UNDERINSURED MOTORIST COVERAGE
## REJECTION OF UNDERINSURED MOTORIST PROTECTION

Underinsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims and whose policy limits are less than your underinsured motorists coverage limits.

Underinsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want underinsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: 4140872:            DATE:

SHAMEKA RENEE LAMAR
OMNI PA UIMREJ (08/08)