IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                        :
                                      :   No.16-1489-HB
                                      :
        v.                            :
                                      :
OMNI INSURANCE COMPANY                :
                                      :

## MEMO OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY OF PLAINTIFF, RICHARD DUNCAN

**FACTS**

**(a)     Generally**

The present action involves claims: (1) seeking payment of the $28,000.00 judgment entered in the underlying tort action; and (2) common law and statutory bad faith damages, in connection with the denial and disclaimer of liability coverage pursuant to an unlicensed operator exclusion under a personal auto policy issued by the defendant, Omni Insurance Company ("Omni"), pursuant to an unlicensed operator exclusion.   The parties have agreed there is no dispute as to the operative facts and have prepared a Stipulation of Facts See Exhibit "A".   The plaintiff, Richard Duncan, was a passenger on board the SEPTA Route "47" when it was struck by a motor vehicle titled in the name of Shameka Renee Lamar, insured under the policy of insurance issued by the defendant, Omni, and operated by Chris Aaron a/k/a Chris Porter. Chris Aaron a/k/a Chris Porter was not a licensed operator in Pennsylvania at the time of the subject accident or at any other time material to this action.  Following the accident, the plaintiff, Richard Duncan, made claim for recovery of damages in tort against the owner and operator of the striking vehicle.  The defendant, Omni, as the insurer of the striking vehicle denied the claims on basis of

14

the unlicensed operator exclusion.  The validity and enforceability of that exclusion, as well as the propriety of Omni's actions in relying upon that exclusion, are at issue in this case

The unlicensed operator exclusion is violative of Pennsylvania law and public policy. Initially, it is noted that the Pennsylvania Motor Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed driver to operate the insured motor vehicle.  The exclusion violates this mandate.   Secondly, the Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage, as well as an extension of liability coverage to permissive users.   The unlicensed operator exclusion impermissibly eliminates coverage in violation of the Financial Responsibility Law.  Thirdly, the exclusion violates public policy.  It is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth insured. The unlicensed operator exclusion is violative of and frustrates the public policy in Pennsylvania.  For these reasons, the unlicensed operator exclusion is void and unenforceable.  The actions of Omni in relying upon this exclusion in light of the clear mandate of Pennsylvania law are bad faith.  Therefore, Omni is required to make payment of not only the $28,000.00 judgment but also interest, counsel fees and punitive damages[2].  Accordingly, the plaintiff, Richard Duncan, respectfully requests that the instant Motion for Partial Summary Judgment be granted.

**(b)**     **Accident**

On October 8, 2012 the plaintiff, Richard Duncan, was a passenger on board the SEPTA Route "47" at or near the intersection of 8th and Dickenson Streets in Philadelphia, Pennsylvania. See Exhibit "A", Stipulation ¶ 3.  At that same time, a motor vehicle titled in the name of Shameka

---

[2] Bad faith damages will need to be assessed in a separate hearing.

Renee Lamar, insured under the policy of insurance issued by the defendant, Omni, and operated by Chris Aaron a/k/a Chris Porter was travelling behind the bus in which the plaintiff, Richard Duncan, was a passenger. See Exhibit "A", Stipulation ¶3. The motor vehicle titled in the name of Shameka Renee Lamar, insured under the policy of insurance issued by the defendant, Omni, and operated by Chris Aron a/k/a Chris Porter struck the bus in which the plaintiff, Richard Duncan, was a passenger. See Exhibit "A", Stipulation ¶ 3. The plaintiff, Richard Duncan, claims to have sustained personal injuries in the collision. See Exhibit "A", Stipulation ¶ 3. At the time of the accident there existed a policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar. See Exhibit "A", Stipulation ¶ 1.

(c)    **Tort Claim**

Following the motor vehicle accident, the plaintiff, Richard Duncan, made a claim upon Chris Aaron, Shameka Renee Lamar and the defendant, Omni, seeking recovery of damages in tort. See Exhibit "A", Stipulation ¶ 5. By letter dated July 1, 2014 counsel for the plaintiff, Richard Duncan, wrote to the defendant, Omni, providing information regarding liability and damages with respect to Duncan's claims arising from the October 8, 2012 collision. See Exhibit "A", Stipulation ¶ 3. By letter dated July 8, 2014 the defendant, Omni, wrote to counsel for the plaintiff, Richard Duncan, denying and disclaiming all coverage for the loss on the basis that the vehicle titled in the name of Shameka Renee Lamar and insured by the defendant, Omni, was being operated by an unlicensed driver at the time of the collision. See Exhibit "A", Stipulation ¶ 4. In the letter of July 8, 2014, Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, advised counsel for the plaintiff, Richard Duncan:

> Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

16

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3.A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

See Exhibit "A", Stipulation ¶ 4.

**(d)    Policy of Insurance**

At the time of the accident there existed a policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar. A true and correct copy of the Policy of Insurance is attached as Exhibit "A", Stipulation ¶ 1. The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar listed the vehicle operated by Chris Aaron a/k/a Chris Porter as an insured vehicle. See Exhibit "A", Stipulation ¶ 1. The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar provided:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

A.    We will pay compensatory damages for **bodily injury** or **property damage** for which any insured becomes legally responsible because of an **auto accident.**

\*                    \*                    \*

B.    **Insured** as used in this Part means:

17

2.    **You**, an **insured** resident**, or any family member** for the ownership, maintenance or use of your covered auto.

3.    A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto.

\*                          \*                          \*

**EXCLUSIONS**

A.    We do not provide Liability Coverage for any insured.

16.    For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

c.    Does not have a valid driver's license; or

d.    Has a suspended or rescinded driver's license.

See Exhibit "A", Stipulation ¶ 1, pp. 24-26.

**(e)    <u>Statutory Provisions</u>**

The policy of insurance in question was issued in Pennsylvania to a Pennsylvania citizen and provided coverage in accordance with Pennsylvania law.  The resolution of the legal coverage issue is governed by Pennsylvania law. Section 1574 of the Pennsylvania Motor Vehicle Code provides:

(a)    **General Rule.** – No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this Chapter or who is not licensed for the type or class of vehicle to be driven.

(b)    **Penalty.** – Any person violating the provisions subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

18

75 Pa.C.S.A. § 1574.

    **(f)**    <u>**Tort Suit**</u>

The plaintiff, Richard Duncan, instituted suit against Chris Aaron and Shameka Renee Lamar in the Court of Common Pleas of Philadelphia County (<u>Richard Duncan v. Chris Aaron and Shameka Renee Lamar</u>, September Term, 2014, No. 0479). See Exhibit "A", Stipulation ¶ 5.   In the Complaint in the underlying tort action, the plaintiff, Richard Duncan, asserted a claim against Shameka Renee Lamar for recovery of damages as a result of allowing an unlicensed driver to operate her vehicle.  See Exhibit "A", Stipulation ¶ 5. In the Complaint, the plaintiff, Richard Duncan, specifically averred:

> 13.    The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:
>
>     a)    failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;
>     b)    failing to maintain the vehicle in proper working order;
>     c)    negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

See Exhibit "A", Stipulation, ¶ 5.  Upon receipt of the Complaint in the underlying tort action, Omni wrote to Shameka Renee Lamar and Chris Aaron a/k/a Chris Porter by letter dated September 16, 2014 declining coverage for the claim and advising them, *inter alia*, to retain their own attorneys at their expense to defend the lawsuit since Omni would not be providing them with an attorney. See Exhibits "A", Stipulation ¶¶ 6 & 7.  The defendant, Omni, did not provide a

defense to Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County. See Exhibit "A", Stipulation ¶¶ 6 & 7. The defendant, Omni, did not indemnify Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County. See Exhibit "A", Stipulation ¶¶ 6 & 7.

The plaintiff, Richard Duncan, proceeded to arbitration in the underlying tort action in the Court of Common Pleas of Philadelphia County. See Exhibit "A", Stipulation ¶ 8.  An Arbitration Hearing was conducted in the underlying tort action in the Court of Common Pleas of Philadelphia County on June 3, 2015. See Exhibit "A", Stipulation ¶ 8.  Following the Arbitration Hearing in the underlying tort action, the arbitrators entered a Report and Award of Arbitrators in favor of the plaintiff, Richard Duncan, and against Chris Aaron and Shameka Renee Lamar. See  Exhibit "A", Stipulation ¶ 8.   The Report and Award of Arbitrators entered in the underlying tort action provides:

> Judgment for Plaintiff and against Defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 ($13,000.00 for medicals and $15,000.00 for pain and suffering).

See  Exhibit "A", Stipulation ¶ 8.  Subsequently, the plaintiff, Richard Duncan, entered Judgment on the Arbitration Award against Chris Aaron and Shameka Renee Lamar.  See   Exhibit "A", Stipulation ¶ 9. The defendant, Omni, has not satisfied the Judgment. See  Exhibit "A", Stipulation ¶ 9.

### (g)    Assignment of Claims

At all times material hereto, Shameka Renee Lamar was the named insured under the policy of insurance issued by Omni.  See Exhibit "A", Stipulation ¶ 1.    Following the entry of the

judgment in the underlying tort action, Richard Duncan obtained from Shameka Renee Lamar an Assignment of all claims and rights against the defendant, Omni.  See Exhibit "A", Stipulation ¶ 10.  Pursuant to this assignment, Richard Duncan seeks: (1) payment of the $28,000.00 judgment; and (2) recovery of common law and statutory bad faith damages.

Shameka Renee Lamar was entitled to a defense and indemnification under the policy issued by the defendant, Omni, in connection with the October 8, 2012 motor vehicle accident. The defendant, Omni, failed to comply with the specific mandate of Pennsylvania law in denying and disclaiming coverage for the loss.  The policy exclusion is therefore, void and unenforceable. The actions of Omni in relying upon the exclusion are in bad faith.   Accordingly, the plaintiff, Richard Duncan, respectfully requests that the Motion for Partial Summary Judgment be granted.

## ARGUMENT

### (a)    Generally

The unlicensed operator exclusion is violative of Pennsylvania law and public policy. The Pennsylvania Motor Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed driver to operate the insured motor vehicle.   Further, the Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage, as well as an extension of liability coverage to permissive users.  Thirdly, it is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth insured. The unlicensed operator exclusion is violative of the clear mandate of Pennsylvania law.  As such, the unlicensed operator exclusion is void and unenforceable. Omni is required to make payment of the judgment in the underlying tort action as well as bad faith damages.  Accordingly, the plaintiff, Richard Duncan, respectfully requests that the instant Motion for Partial Summary Judgment be granted

**(b)      Standard of Review**

Summary judgment should be granted when the pleadings and evidence "show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed.R.Civ.P. 56 (a)).). In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) and Wisniewski v. Johns—Manville Corp., 812 F.2d 81, 83 (3d Cir.1987). The unlicensed operator exclusion is in direct contravention of the requirements of: (1) the Pennsylvania Motor Vehicle Code; (2) the Pennsylvania Motor Vehicle Financial Responsibility Law; and (3) Pennsylvania public policy. Accordingly, the Partial Summary Judgment in favor of plaintiff, Richard Duncan, is appropriate.

**(c)      Methodology**

In the present case, it is assumed that Omni will assert that the unlicensed operator exclusion promotes cost control, a goal of the Financial Responsibility Law. Initially, the Court held that the overriding goal of the Financial Responsibility Law was cost control. See Eichelman v. Nationwide Insurance Company, 711 A.2d 1006 (Pa. 1998). That point of view has been abandoned by the Supreme Court. Specifically, the Supreme Court has recognized the goal of maximum feasible restoration to accident victims as an equally important purpose of the law. The goal of cost control is no longer the overriding rationale of the Financial Responsibility Law. In

fact, a majority of Justices of the Supreme Court have abandoned cost control as the overriding goal of the state when resolving coverage issues under automobile policies in Pennsylvania.

In Williams v. GEICO, 32 A.3d 1195 (Pa. 2011), the Supreme Court established a methodology requiring stricter scrutiny of limitations of coverage in auto policies in Pennsylvania. In so doing, the Supreme Court significantly changed its point of view in assessing the enforceability and applicability of limitations in policies under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. As noted, limitations on coverage were previously routinely enforced on the basis of the rationale of cost control. See Eichelman v. Nationwide, supra, and its progeny. In Williams v. GEICO, supra., the Supreme Court changed the methodology to be employed in reviewing coverage limitations. Cost control is no longer the overriding public policy used to validate policy exclusions. The remedial goals of the statute are to be emphasized.

In Williams, the Supreme Court essentially abandoned cost control as the overriding goal of the Financial Responsibility Law. In Williams, Justice Saylor stated in a Concurring Opinion:

> I would also once and for all abandon the rubric that cost containment was the overarching policy concern of the Motor Vehicle Financial Responsibility Law, since the act clearly retained the core remedial objectives of the prior regulatory scheme.

Williams v. GEICO, 32 A.2d at 1210 (Saylor, J. Concurring). Justice Baer in his Concurring Opinion further stated:

> I recognize that the MVFRL was passed to control the spiraling auto insurance premiums paid by Pennsylvania drivers in the early 1980's. Indeed, I appreciate the concerns of the insurance industry, vociferously expressed in nearly every brief it files with this Court, that any expansion of insurers' risk of liability could lead us back to those spiraling premiums. Nonetheless, as with all exigencies, whether they be national (the economy), statewide (budget deficits), or local (transit woes), the reality is that they wax and wane. In considering the insurance industry's rhetoric,

> I cannot help but observe that the industry appears to be awash in revenue. It is hard not to notice the industry's spending on many discretionary activities, including incessant television advertising, the All–State Sugar Bowl, Safe Auto's sponsorship of the Ultimate Fighting Championship Series, and Progressive Field, home of the Cleveland Indians. In consequence, I join my colleagues in calling for advocates and the judiciary to cease their continued reliance on the unthinking perpetuation of the long-ameliorated concern for cost containment, and, if my supposition regarding the industry's financial status is correct, I urge the industry to reduce premiums as a humanitarian gesture to suffering Pennsylvanians.

Williams v. GEICO, 32 A.2d at 1210-1211 (Baer, J. Concurring).   Similarly, Justice Todd, in her

Concurring Opinion, stated:

> While I acknowledge that our Court in Burstein found that cost containment was the "dominant" and "overarching" public policy underlying the MVFRL, 570 Pa. at 184 n. 3, 809 A.2d at 208 n. 3, I join those Justices who eschew the mantra of cost containment—used by various courts to routinely limit the rights of insureds— in favor of a recognition of other equally important policies and goals that are foundational to the MVFRL, such as the remedial objectives of the statute and the coverage rights of insureds.

Williams v. GEICO, 32 A.2d at 1212 (Todd, J. Concurring).   Justice McCaffery joined the

Concurring Opinion of Justice Todd.  Thus, in Williams, the majority of the Justices on the Court

at that time adopted a rationale which significantly departs from prior pronouncements.  A similar

methodology must be employed in the case at bar. [3]

---

[3] In addition, in Heller v. PA League of Cities, 32 A.2d 1213 (Pa. 2011), the Court stated:

> Our inquiry, however, does not end here. Despite our repeated affirmance of the cost containment policy underlying the MVFRL, we have cautioned that it has limits. While the enactment of the MVFRL grew out of a legislative concern for the "spiraling" costs of automobile insurance, the cost containment objective cannot be mechanically invoked as a justification for every contractual provision that restricts coverage and purportedly lessens the cost of insurance. Burstein, 809 A.2d at 208.

Heller v. PA League of Cities, 32 A.2d 1213, 1222 (Pa. 2011).  Cost control is no longer the goal.  It cannot be used to validate policy exclusions.

Policy exclusions must be viewed in light of the goal of remediation for motor vehicle accident victims.  Similarly, exclusions are to be narrowly construed.  In Swarmer v. Mutual Benefit, 72 A.3d 641 (Pa. Super. 2013), the Superior Court specifically recognized this approach to policy exclusions:

> Where, as here, a defense is based on an exception or exclusion in a policy, the burden is on the insurer to establish its application. Donegal Mut. Ins. Co. v. Baumhammers, 595 Pa. 147, 938 A.2d 286, 290 (Pa. 2007); Prudential Prop. & Cas. Ins. Co. v. Sartno, 588 Pa. 205, 903 A.2d 1170 (Pa. 2006). Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured. See Kropa v. Gateway Ford, 2009 PA Super 91, 974 A.2d 502 (Pa.Super. 2009) (citing Pecorara v. Erie Ins. Co., 408 Pa. Super. 153, 596 A.2d 237 (Pa.Super. 1991); Baumhammers, supra (strictly construing intentional act exclusion).

Id., 72  A.2d at 645.   The unlicensed operator exclusion must be scrutinized using this methodology.

### (d)   Unlicensed Operator Exclusion is Void and Unenforceable

#### (1)   Generally

The unlicensed operator exclusion is invalid and unenforceable.  Initially, it is violative of the Motor Vehicle Code.  Secondly, it is directly contrary to the dictates of the Financial Responsibility Law.  Finally, the exclusion is void as against public policy.  Therefore, Partial Summary Judgment should be entered in favor of Richard Duncan.

#### (2)   Motor Vehicle Code

The unlicensed operator exclusion is violative of the provisions of the Pennsylvania Vehicle Code.  The Pennsylvania Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed operator to operate the vehicle.  Section 1574 of the

Pennsylvania Vehicle Code establishes the obligations of a vehicle owner with respect to use by an unlicensed operator.   In this regard, section 1574 provides:

> **§ 1574.  Permitting unauthorized person to drive.**
>
> **(a)  General Rule.**--No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.
>
> **(b)  Penalty.**--Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa. C.S.A. § 1574.  The Superior Court has held 1574(b) imposes vicarious liability on the owner.  In this regard, the Court has held:

> The language of section 1574(b) indicates that one who violates the provisions of *section 1574(a) is* jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle. The legislative intent, however, has been interpreted to hold the owner of the vehicle vicariously liable for such damages. Commonwealth of Pa., Dept of Public Welfare v. Hickey, *136 Pa. Commw. 223, 582 A.2d 734 (Pa. Cmwlth. 1990).* In Hickey*,* the plaintiff sued the defendant/owner of an automobile under section 1574 when plaintiff's decedent, unlicensed and intoxicated, was killed while driving defendant's automobile. In determining the legislative intent behind the enactment of *section 1574,* the Hickey court considered the theories of strict liability, vicarious liability and negligence per se and concluded "by process of elimination, therefore, it seems to us that the Legislature has intended to establish a system of vicarious liability". *582 A.2d at 737.*

Terwilliger v. Kitchen, 781 A.2d 1201, 1213 (Pa. Super. 2001).  That rationale is applicable to the case at bar.

In Terwilliger v. Kitchen the owner permitted an unlicensed operator to use her vehicle.  The owner was found to be vicariously liable for the negligent conduct of the unlicensed operator by reason of § 1574.  The Pennsylvania Superior Court explained the basis for the liability of the owner as follows:

26

Here, the vehicle owner was not found liable for negligent entrustment because she did not know or have reason to know her son would operate her vehicle while intoxicated. The court determined she should have known her son did not possess a valid driver's license when she entrusted her vehicle to him and that in doing so, she violated section 1574(a). The court also found, however, her violation of section 1574(a) was *not* a substantial factor in causing Stefancin's injuries. **As a result, the vehicle owner is not directly liable for Stefancin's injuries. She did not act with other tortfeasors to injure another and is, therefore, not subject to joint tortfeasor liability. Rather, the vehicle owner's liability is based solely upon her violation of section 1574(a), arising through a positive rule of statutory law, section 1574(b). Kitchen's negligence is imputed to her, making her vicariously liable for the portion of the damages for which Kitchen was found liable.**

Appellant relies primarily upon **Shomo, supra**, in which the issue on appeal was whether the vehicle owner violated section 1574(a), and, thus, could be held jointly and severally liable pursuant to section 1574(b) for damages in the appellant's negligence action. The Shomo Court found that a violation of 1574(a) occurs *at the time the owner or controller of the vehicle entrusts his vehicle* to one he knows or has reason to know is unauthorized, or unlicensed, to drive the vehicle on the highway. *Id.* The Shomo Court focused on the time at which the statute is violated rather than the type of liability to be imposed and, as a result, *Shomo* is not controlling.

Accordingly, we agree with the trial court that the vehicle owner is vicariously liable for the damages caused by Kitchen.

Terwilliger v. Kitchen, 781 A.2d at 1216.  See also,  O'Loughlin v. Hunger,  2009 U.S. Dist. Lexis

33711 (E.D. Pa. Buckwalter, J).  In that case, Judge Buckwalter stated in a footnote:

The Pennsylvania legislature has enacted a statute specifically prohibiting an automobile owner from "authorizing or permitting an automobile owned by him or under his control to be operated by any person without a valid driver's license." 75 PA. CONS. STAT. § 1574. In order to violate the statute, "it must be shown that the owner knew or had reason to know that the individual to whom he or she authorized to operate his or her vehicle did not have a valid driver's license." Ferry, 709 A.2d at 403 (Pa. Super. 1998). Pennsylvania courts, however, have found that violation of that statute only makes the automobile owner vicariously liable for the injuries caused by the driver of the vehicle and does not impose on the owner individual negligence under a negligent entrustment theory. Terwilliger v. Kitchen, 2001 PA Super 215, 781 A.2d 1201, 1208 (Pa. Super. 2001). "[E]ntrusting a motor vehicle to an unlicensed driver is not in and of itself negligent." Maxwell v. Enter. Leasing, Co., 4 Pa. D. & C.4th 497, 504 n.4 (1989)  (citing Chamberlain v. Riddle, 155 Pa. Super. 507, 38 A.2d 521 (Pa. Super.1944)), aff'd, 397 Pa. Super. 651, 571 A.2d 509 (Pa. Super. 1989).

O'Loughlin v. Hunger, 2009 U.S. Dist. LEXIS 33711 at *19-*20.    This analysis is applicable

herein.   Omni cannot exclude liability for this exposure.   The exclusion is an impermissible

restriction of coverage.   It is unenforceable.

In the Complaint in the underlying tort action, the plaintiff, Richard Duncan, specifically

asserted a claim against Shameka Renee Lamar for recovery of damages as a result of allowing an

unlicensed driver to operate her vehicle. See Exhibit "A", Stipulation ¶ 5.   In the Complaint, the

plaintiff, Richard Duncan, specifically averred:

> 13.    The aforesaid collision, which caused Plaintiff's injuries and losses was a
> direct and proximate result of the negligent and careless conduct of the defendant
> owner, Shameka Renee Lamar, which consisted of the following:
>
> a)    failing to exercise due care for the rights, safety and position of the
> plaintiff at the location aforesaid;
>
> b)    failing to maintain the vehicle in proper working order;
>
> c)    negligently and carelessly granting permission to the defendant
> driver for the use of the vehicle owned by the defendant owner,
> when the latter defendant knew or should have known that the
> former defendant was unlicensed and/or incapable or unwilling to
> properly and safely operate said vehicle.

See Exhibit "A" to Stipulation, ¶ 5.   In the Complaint, Richard Duncan specifically set forth a

claim under § 1574. The Legislature has enacted a statute imposing liability on persons who permit

unlicensed operators to use their vehicles.   Omni cannot ignore this mandate and restrict coverage

any more than it can restrict coverage for other violations of the Vehicle Code.   Omni cannot

restrict coverage to an operator who runs a red light.   Such a policy exclusion would be void and

unenforceable.   The same is true of the unlicensed operator exclusion. Omni cannot create this

exclusion and then rely upon it to disclaim coverage.  The exclusion is void.  Omni's actions are in bad faith.

### (3)      Financial Responsibility Law

The unlicensed operator exclusion is further violative of the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 101 et seq.  Section 1786(a) Motor Vehicle Financial Responsibility Law requires mandatory liability coverage.  In this regard, 1786 (a) provides:

> **(a)      General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

75 Pa. C.S.A. § 1786(a).   Section 1786(f) of the Motor Vehicle Financial Responsibility Law requires the extension of mandatory liability coverage to permissive drivers.  In this regard, § 1786(f) provides:

> **(f)      Operation of motor vehicle without required financial responsibility.--** Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle **or** permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter.

75 Pa.C.S.A. § 1786(f)     The Pennsylvania Superior Court has held that §1786 implicitly directs that all permissive users be insured under the owner's policy, stating:

> Admittedly, the MVFRL continues not to include specific language directing that all permissive users of a vehicle be insured under the owner's insurance. ***However, we find the changes to § 1786 implicitly direct that such coverage be provided.***

Progressive N. Ins. Co. v. Universal Underwriters Ins. Co., 898 A.2d 1116, 1119 (Pa. Super. 2006), appeal denied, 909 A.2d 1290 (Pa. 2006) (Emphasis added).  Courts of this circuit have recognized

and applied this required extension of mandatory liability coverage.  In <u>Allstate v. Tokio Marine</u> <u>& Nichido Fire Ins. Co.</u>, 464 F. Supp. 2d 452 (E.D. Pa. 2006) this Court noted:

> . . . the MVFRL requires that all other vehicle owners maintain active financial responsibility on their vehicles at all times and that all permissive users of a vehicle be insured under the owner's insurance.

<u>Id</u> at 460-461, <u>citing</u>, <u>Progressive N. Ins. Co. v. Universal Underwriters Ins. Co.</u>, 898 A.2d 1116 (Pa. Super. 2006).  The unlicensed operator exclusion cannot be used to frustrate that mandate.

The Financial Responsibility Law requires that owners of vehicles provide financial responsibility.  The Law defines financial responsibility, in pertinent part,  as follows:

> The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident . . .

75 Pa. C.S.A. § 1702.  The unlicensed operator exclusion is violative of the explicit provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. The unlicensed operator exclusion impermissibly eliminates coverage in violation of the Pennsylvania Motor Vehicle Financial Responsibility Law §§ 1786(a), 1786(f) and 1702.   The unlicensed operator exclusion, is in conflict with and repugnant to explicit statutory provisions of the Financial Responsibility Law. As such, it is void and unenforceable.  Provisions in a contract of insurance that are in conflict with, or repugnant to, statutory provisions must yield to the statute and are invalid.  <u>McWeeney</u> <u>v. Estate of Strickler</u>, 61 A.3d 1023, 1031 (Pa. Super. 2013).  At issue in <u>McWeeney</u>, was whether a resident, non-relative permissive driver was bound by the vehicle owner's election of limited tort.  The permissive driver did not own a vehicle.  Accordingly, the permissive driver maintained she was entitled to full tort coverage by operation of § 1705(a) (3) of the Pennsylvania Motor Vehicle Financial Responsibility Law which provides, in pertinent part:

> (a)    Application of tort options.—(3) An individual who is not an owner of a currently registered private passenger motor vehicle and who is not a named insured or insured under any private passenger motor vehicle policy shall not be precluded from maintaining an action for noneconomic loss sustained in motor vehicle accident as the consequence or fault of another person pursuant to applicable tort law.

75 Pa.C.S.A. § 1705(a)(3).  The defendant driver disagreed and maintained the position that the

permissive driver was an "insured" under the policy of insurance and was bound by limited tort

election of the vehicle owner.  In support of her position, the defendant driver relied, in part, upon

language in the policy of insurance stating "all permissive drivers are insured under its terms for

both liability to others and first party benefits".  Thus, the Court framed the issue as follows:

> The question becomes, therefore, whether the policy may properly define an "insured" more broadly than does the MVFRL for purposes of binding permissive drivers to the owner's election of limited tort.  Where, as here, the insurance policy would bar more drivers from claiming non-economic damages against third party tortfeasors than was contemplated in Section 1705 it runs afoul of the statute and is not enforceable.

Id at 1029.  Applying the applicable provisions of the Financial Responsibility Law, the Court

concluded the policy language was in conflict with the statute and unenforceable.  In this regard

the Court held:

> Therefore, to the extent that Mr. Brandt's policy would preclude permissive drivers from filing full tort claims against third party tortfeasors when they otherwise have the express right to do so under the MVFRL, the policy is unenforceable.

Id at 1031.  Similar analysis is applicable herein.  The Pennsylvania Vehicle Code imposes liability

on the owner of a motor vehicle who permits an unlicensed driver to operate it.  Further, the

provisions of the Financial Responsibility Law mandate the extension of coverage to all permissive

drivers.  The unlicensed operator exclusion eliminates coverage contrary to the mandate of

Pennsylvania law.  It is unenforceable.  Omni acted in bad faith in including the exclusion in its

policy and then relying upon it to deny coverage.

(4)     **Public Policy**

The unlicensed operator exclusion is violative of public policy.  The public policy in Pennsylvania favors the deterrence of uninsured drivers and the extension of coverage to motor vehicle operators.  It is in the interest of the public good to have insured motorists on the highways. In Allen v. Erie, 534 A.2d 839 (Pa. Super. 1987) the Court stated:

> In passing the [MVFRL], the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid. The [MVFRL] has the effect of requiring all owners of registered vehicles to share in the burden of insurance before they can obtain the benefits. By denying benefits to a certain class of people -- those not insuring their registered vehicles -- the [MVFRL] encourages the purchase of insurance by all owners who register vehicles which can be legally operated on the highways.

Allen v. Erie,  534 A.2d at 840-41.  See also Windrim v. Nationwide,  641 A.2d 1154 (Pa. 1994).[4] The enactments of the Legislature, noted above, are the embodiment of public policy. Erie v. Baker, 972 A.2d 507, 511 fn. 7.   The unlicensed operator exclusion violates public policy and cannot be enforced.  Omni cannot use the exclusion to illegally restrict coverage.  To do so is bad faith.

(e)     **Omni Acted in Bad Faith**

In this case, Omni has inserted an unlicensed operator exclusion in its policy in order to avoid coverage in violation of Pennsylvania law.   While Omni may arguably deny coverage to the operator of the vehicle if he is unlicensed, it may not do so for the owner of the vehicle.  In refusing to provide Shameka Renee Lamar a defense and indemnification, Omni acted in bad faith.

---

[4]  As noted herein, the goal of cost containment as the overriding purpose of the Law has since been abandoned by the Court.

Accordingly, it is respectfully requested that the Court enter an Order finding Omni to have acted in bad faith in using the exclusion to deny coverage to Shameka Renee Lamar.

In Pennsylvania, bad faith has been held to be any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. See Terletsky v. Prudential Property & Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994 ) appeal den'd 659 A.2d 560 (Pa. 1995). See also  Rancosky v. Wash. Nat. Ins. Co., 130 A.3d 79 (Pa. Super. 2015)Rehearing den'd, 2016 Pa. Super. LEXIS 134 (2016) (Observing "[w]hile our Supreme Court has not yet addressed these issues, this Court has ruled that, to succeed on a bad faith claim, the insured must present clear and convincing evidence to satisfy a two part test: (1) the insurer did not have a reasonable basis for denying benefits under the policy, and (2) the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim").   The Third Circuit has adopted that rationale and established the following framework for analyzing the actions of insurers:

> We have predicted that the Pennsylvania Supreme Court would define the term according to the definition set forth by the Pennsylvania Superior Court in Terletsky v. Prudential Property and Casualty Ins. Co., 437 Pa. Super. 108, 649 A.2d 680 (Pa. Super. Ct. 1984). *See* Keefe v. Prudential Property and Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000). There, the court adopted the following definition of "bad faith":
>
>  "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
>
> *Terletsky*, 649 A.2d at 688 (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)) (citations omitted).

Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 136-137 (3d Cir. 2005).  We respect

to the duties and obligations of an insurer, the Pennsylvania Superior Court has observed:

> **Individuals expect that their insurers will treat them fairly and properly
> evaluate any claim they may make.** A claim must be evaluated on its merits alone,
> by examining the particular situation and the injury for which recovery is sought.
> **An insurance company may not** look to its own economic considerations, **seek to
> limit its potential liability**, and operate in a fashion designed to 'send a message.'
> Rather, it has a duty to compensate its insureds for the fair value of their injuries.
> Individuals make payments to insurance carriers to be insured in the event coverage
> is needed. It is the responsibility of insurers to treat their insureds fairly and provide
> just compensation for covered claims based on the actual damages suffered.
> Insurers do a terrible disservice to their insureds when they fail to evaluate each
> individual case in terms of the situation presented and the individual affected.

Bonenberger v. Nationwide Mutual Insurance Company, 791 A.2d 378, 382 (Pa. Super. 2002).  In

the case at bar, the actions of Omni in relying on the unlicensed driver exclusion are bad faith.

Shameka Renee Lamar was entitled to a defense and indemnification under the policy issued by

the defendant, Omni, in connection with the October 8, 2012 motor vehicle accident.  Nonetheless,

the defendant, failed to provide a defense and indemnification to its insured, Shameka Renee

Lamar.  In the absence of a defense, the matter proceeded to arbitration and an Award was entered

against both the owner, Shameka Renee Lamar, and the driver, Chris Aaron. In relying on the

unlicensed driver exclusion and denying and disclaiming the underlying claims, the defendant,

Omni, failed to comply with the specific mandates of Pennsylvania law.  Omni is required to make

payment of the judgment in the underlying tort action as well as bad faith damages.

In the underlying Complaint, Richard Duncan specifically set forth a claim under § 1574.

The Legislature has enacted a statute imposing liability on persons who permit unlicensed

operators to use their vehicles.  Omni cannot ignore this mandate and restrict coverage.  The

unlicensed operator exclusion is violative of Pennsylvania law and public policy.   Further, the

Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage,

as well as an extension of liability coverage to permissive users.   The unlicensed operator

exclusion impermissibly eliminates coverage in violation of the Pennsylvania Motor Vehicle Financial Responsibility Law §§ 1786(a), 1786(f) and 1702.   The unlicensed operator exclusion, is in conflict with and repugnant to explicit statutory provisions of the Financial Responsibility Law.   Finally, it is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth insured. The unlicensed operator exclusion is violative of the clear mandate of Pennsylvania law.

Shameka Renee Lamar was entitled to a defense and indemnification under the policy issued by the defendant, Omni, in connection with the October 8, 2012 motor vehicle accident.  In relying on the unlicensed driver exclusion and denying and disclaiming the underlying claims, the defendant, Omni, failed to comply with the specific mandates of Pennsylvania law. Thus, the denial was unfounded and in bad faith.  Omni is required to make payment of the judgment in the underlying tort action as well as bad faith damages.  Accordingly, it is requested that the Court: (1) find the exclusion unenforceable; and (2) find Omni to have acted in bad faith.

**CONCLUSION**

The unlicensed operator exclusion is violative of Pennsylvania law and public policy. The Pennsylvania Motor Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed driver to operate the insured motor vehicle.   Further, the Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage, as well as an extension of liability coverage, to permissive users.  In addition, it is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth to be insured.   The unlicensed operator exclusion impermissibly eliminates coverage in violation of Pennsylvania law and policy.   As such, it is requested that the Court enter an Order: (1) requiring Omni to pay the $28,000.00 judgment; and (2)

finding Omni to have acted in bad faith, with bad faith damages to be assessed at a later

hearing.

Respectfully Submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:     _JCH4113_____
        JAMES C. HAGGERTY, ESQUIRE
        SUZANNE TIGHE, ESQUIRE
        PA Attorney I.D. # 30003; 80179
        1835 Market Street, Suite 2700
        Philadelphia, PA  19103
        (267) 350-6600
        FAX (215) 665-8197

KELLY & HERRON, P.C.

BY:   /s/ Kevin P. Kelly_____
        KEVIN P. KELLY, Esquire
        PA Attorney I.D. # 28306
        1500 Market Street
        Centre Square – West Tower
        Suite W-3110
        Philadelphia, PA  19102

Attorneys for Plaintiff