## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2016-cv- 1489 |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| | : | |
| Defendant | : | |

## DEFENDANT OMNI INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

Defendant, Omni Insurance Company ("Omni" and/or "Defendant"), by and through its attorneys, Marshall Dennehey Warner Coleman & Goggin, hereby moves for summary judgment in its favor, for the reasons set forth below and in the accompanying omnibus memorandum of law.

1.     On September 1, 2012, Shameka Renee Lamar completed an Application for Private Passenger Auto Insurance seeking to purchase a policy of insurance covering a 2003 Chevrolet Avalanche. *See* Stipulation, Exhibit "A" to Plaintiff's Motion, at ¶ 6; and Application, Exhibit "2" to the Stipulation.

2.     The Application required Ms. Lamar to identify all persons over 14 years of age who were residents of her household, "LICENSED OR NOT" (emphasis in original application); she listed only herself. *See* Application, Exhibit "2" to the Stipulation.

8.     The Application asked whether the policy Ms. Lamar was applying for was a NAMED NON-OWNER POLICY (emphasis in original application); she answered "No." *See* Application, Exhibit "2" to the Stipulation.

9.      The Application asked whether there were "Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)?" (emphasis in original application); Ms. Lamar answered "No." *See* Application, Exhibit "2" to the Stipulation.

10.     The Application asked, "Do all drivers reside in the named insured's household?"; Ms. Lamar answered "Yes". *See* Application, Exhibit "2" to the Stipulation.

11.     The Application further asked, "Are there any occasional operators not rated as previously described?"; Ms. Lamar answered "No." *See* Application, Exhibit "2" to the Stipulation.

12.     The Application sets forth an **"APPLICANT'S STATEMENT"** with the following affirmation:

> I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSO, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY."
>
> I certify that:
>
> I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR OR OCCASIONAL basis. ... I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
>
> . . .
>
> **FRAUD**
>
> The insurance policy issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family numbers" and all persons of driving age in the undersigned's household; the description of the vehicles

> insured; the location of the principle place of garaging; and the undersigned's place of residence.
>
> Omni Insurance Company may deny coverage for an accident if the undersigned or and (sic) "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.
>
> . . .
>
> I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. ...
>
> /s/ Shameka Lamar_____     9/1/2012
>
> Signature of Applicant           Date
>
> Policy#4140872

*See* Application, Exhibit "2" to the Stipulation (emphases in original).

13.     Omni issued a private passenger auto policy to named insured Shameka Renee Lamar, policy number 4140872 (the "Policy") for a policy period of September 1, 2012 to September 1, 2013. *See* Stipulation, ¶ 5, and the attached Policy (Exhibit "1").

14.     The Insuring Agreement of the Policy's liability coverage provides as follows:

> **A.**     We will pay compensatory damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. ..... We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

*See* Policy, Exhibit "1" to the Stipulation, at p. 8 (bold emphases in original, indicating defined policy terms).

15.     The Insuring Agreement of the Policy's liability coverage defines "insured" as follows:

> **B.**     **Insured** as used in this Part means:
>
> > 1.     **You**, an **insured resident**, or any **family member** for the ownership, maintenance or use of **your covered auto**.

3

2. **You**, an **insured resident**, or any **family member** while operating a non-owned auto with the express or implied permission of the **owner**.

3. A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted.  The person must hold a valid driver's license at the time of loss and must not be a regular operator of **your covered auto**.

4. For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5. For any **auto** or **trailer**, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision (**B.5.**) applies only if the person or entity does not own or hire the **auto** or **trailer**.

*See* Policy, Exhibit "1" to the Stipulation, at pp. 8-9 (bold emphases in original, indicating defined policy terms; underlining added).

    16.    The Exclusions from the Policy's liability coverage provide as follows:

    **A.**    We do not provide Liability Coverage for any **insured**:

    \*\*\*

    **16.**    For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

    \*\*\*

    c.    Does not have a valid driver's license, or

    d.    Has a suspended or rescinded driver's license.

*See* Policy, Exhibit "1" to the Stipulation, at pp. 10, 12 (bold emphases in original, indicating defined policy terms; underlining added).

18.     On October 8, 2012, Chris Aaron a/k/a Chris Porter was driving the vehicle owned by Shameka Renee Lamar and was involved in an accident with a SEPTA bus ("the accident").

17.     Chris Aaron a/k/a Chris Porter was not listed or identified in the Application. *See* Application, Exhibit "2" to the Stipulation.

18.     Chris Aaron a/k/a Chris Porter was not a licensed operator at the time of the accident or at any other time material to this action. *See* Stipulation at ¶ 6.

19.     Chris Aaron a/k/a Chris Porter was not an "insured" under the Policy at the time of the accident.

20.     The Policy exclusion is clear and unambiguous, and precluded any liability coverage for the accident.

21.     The Policy definition of "insured," which requires that a permissive user of the covered auto must "hold a valid driver's license at the time of loss," is valid and enforceable as a matter of Pennsylvania law.

22.     The Policy exclusion prohibiting coverage to any "insured" for any bodily injury or property damage resulting if an insured vehicle is driven by an individual who "Does not have a valid driver's license," or who has "a suspended or rescinded driver's license," is valid and enforceable as a matter of Pennsylvania law.

23.     Omni had no obligation to provide a defense or indemnity for Plaintiff's lawsuit seeking recovery for bodily injury allegedly sustained in the accident.

24.     Omni had no obligation to satisfy, or make any payment with respect to, the judgment entered in favor of Plaintiff in the lawsuit seeking recovery for bodily injury allegedly sustained in the accident.  (*See* Stipulation ¶ 24).

5

25.     Omni denied coverage based on the express language of its policy. *See* Stipulation ¶ ¶ 12 and 13, and Exhibit "4" to the Stipulation (letter dated July 8, 2014, from Andrew Funk, Bodily Injury Supervisor for Omni, to Plaintiff's counsel).

26.     Omni acted in good faith and in accordance with all duties and obligations under the Policy.

27.     Omni's denial of coverage was not frivolous or unfounded; there was no dishonest purpose, no breach of any known duty, and no motive of self-interest or ill will.

28.     Omni is entitled to judgment in its favor on all claims asserted by Plaintiff.

**WHEREFORE**, Defendant, Omni Insurance Company, demands judgment in its favor and against Plaintiff.

Respectfully submitted:

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____
        R. BRUCE MORRISON, ESQUIRE
        TERESA FICKEN SACHS, ESQUIRE
        PA Attorney I.D. Nos. 34797/41136
        2000 Market Street, Suite 2300
        Philadelphia, PA 19103
        215-575-2600/ 215-575-0856 (F)
        rbmorrison@mdwcg.com
        tfsachs@mdwcg.com
        *Attorneys for Defendant*

Dated:  July 18, 2016

## CERTIFICATE OF SERVICE

I, R. Bruce Morrison, Esquire, attorney for Defendant, hereby certify that a true and correct

copy of the foregoing Motion of Defendant Omni Insurance Company for Summary Judgment was

served upon the following parties via electronic court filing system, on the below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

R. Bruce Morrison

Dated: July 18, 2016

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD DUNCAN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2016-cv- 1489 |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| | : | |
| Defendant | : | |

**OMNI INSURANCE COMPANY'S MEMORANDUM OF LAW
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Defendant Omni Insurance Company ("Defendant" or "Omni") files this omnibus Memorandum of Law in opposition to Plaintiff's Motion for Partial Summary Judgment and in support of Omni's Motion for Summary Judgment. For the reasons set forth below and in Omni's corresponding Answer and Cross-Motion, Omni is entitled to judgment in its favor, as a matter of law, on all claims asserted by Plaintiff.

I.        **UNDISPUTED FACTS**

The following relevant facts have been expressly stipulated to by the parties, and/or are undisputed as a matter of record.

**The Application for Insurance**

On September 1, 2012, Shameka Renee Lamar completed an Application for Private Passenger Auto Insurance, seeking to purchase a policy of insurance covering a 2003 Chevrolet Avalanche. *See* Stipulation, Exhibit "A" to Plaintiff's Motion, at ¶ 6; and Application, Exhibit "2" to the Stipulation.

The Application required Ms. Lamar to identify all persons over 14 years of age who were residents of her household, "LICENSED OR NOT" (emphasis in original application). Ms. Lamar listed only herself. *See* Application, Exhibit "2" to the Stipulation. The Application also asked Ms. Lamar whether the policy she was applying for a NAMED NON-OWNER POLICY (emphasis in original application). She answered "No." *Id.*

The Application further required Ms. Lamar to identify whether there were "Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)?" (emphasis in original application). Ms. Lamar's answer was "No." *Id.* The Application further asked, "Do all drivers reside in the named insured's household?" Ms. Lamar's answer was "Yes." *Id.* Finally, the Application asked, "Are there any occasional operators not rated as previously described?" Ms. Lamar's answer was "No." *Id.*

The Application includes an "**APPLICANT'S STATEMENT**" with the following affirmation:

> I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY." ....
>
> I certify that:
>
> I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR OR OCCASIONAL basis. ... I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
>
> . . .
>
> **FRAUD**
>
> The insurance policy issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information

2

> regarding license and driving history of the undersigned, "family numbers" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.
>
> Omni Insurance Company may deny coverage for an accident if the undersigned or and (sic) "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.
>
> . . .
>
> I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. ...
>
> /s/ Shameka Lamar _____ 9/1/2012
> Signature of Applicant          Date
> Policy#4140872

*Id.* (all emphases in original).  Chris Aaron a/k/a Chris Porter was not listed or identified in the Application. *Id.*

### The Omni Policy

Omni issued a private passenger auto policy to named insured Shameka Renee Lamar, policy number 4140872 (the "Policy") for a policy period of September 1, 2012 to September 1, 2013. *See* Stipulation ¶ 6 and Exhibit "1." The Policy provided liability coverage pursuant to an Insuring Agreement that states:

> A.   We will pay compensatory damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. ..... We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

*See* Policy at p. 8 (bold emphases in original, indicating defined policy terms).

The Policy's liability coverage defines "insured" as follows:

> B.   **Insured** as used in this Part means:

3

1. **You**, an **insured resident**, or any **family member** for the ownership, maintenance or use of **your covered auto**.

2. **You**, an **insured resident**, or any **family member** while operating a non-owned auto with the express or implied permission of the **owner**.

3. A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted. <u>The person must hold a valid driver's license at the time of loss</u> and must not be a regular operator of **your covered auto**.

4. For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5. For any **auto** or **trailer**, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision (**B.5.**) applies only if the person or entity does not own or hire the **auto** or **trailer**.

*Id.* at pp. 8-9 (bold emphases in original, indicating defined policy terms; underlining added).

The liability coverage excludes any coverage resulting from the use of any vehicle by an unlicensed driver:

A. We do not provide Liability Coverage for any **insured**:

\*\*\*

16. For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

\*\*\*

c. <u>Does not have a valid driver's license,</u> or

d. <u>Has a suspended or rescinded driver's license.</u>

4

*Id.* at pp. 10, 12 (bold emphases in original, indicating defined policy terms; underlining added).

## The Accident and the Lawsuit

On October 8, 2012, Chris Aaron a/k/a Chris Porter was driving Lamar's vehicle, and was involved in an accident with a SEPTA bus. Plaintiff was a passenger on that bus. Chris Aaron a/k/a Chris Porter was not a licensed operator at the time of the accident or at any other time material to this action. *See* Stipulation, Exhibit "A" to Plaintiff's Motion, at ¶ 6.

Plaintiff filed a lawsuit against Chris Aaron and Ms. Lamar in the Philadelphia County Court of Common Pleas, alleging that he sustained personal injuries in the accident. *See* Stipulation ¶ 14 and Exhibit "5" thereto. Omni denied coverage because the insured vehicle was being operated by an unlicensed driver. *See* Stipulation at ¶¶ 12-13 and Exhibit "4" thereto. The case proceeded to an arbitration hearing, and the arbitrators entered an award of $28,000 in favor of Plaintiff and against Aaron and Lamar. *See* Stipulation at ¶¶ 22-23 and Exhibit "8" thereto. Plaintiff entered judgment on the award. *See* Stipulation at ¶ 24 and Exhibit "9" thereto.

Plaintiff and Lamar then entered an agreement whereby Lamar assigned to Plaintiff her rights against Omni. In consideration for that assignment, Plaintiff agreed not to collect or execute upon the judgment against Lamar and Aaron, and further agreed to mark that judgment satisfied at the conclusion of these proceedings, regardless of the outcome. *See* Stipulation at ¶36 and Exhibit "10" thereto.

## This Lawsuit

Plaintiff filed this lawsuit against Omni in the Court of Common Pleas of Philadelphia County. In Count I, titled "Bad Faith – Excess Verdict," Plaintiff claims that he should be entitled to collect the entire $28,000 judgment from Omni[1] based upon Omni's alleged violations

---

[1]    The policy, if it had applied, would have provided a total per person liability limit of $15,000. *See* Exhibit "1" to Stipulation.

of the policy and of various provisions of Pennsylvania law.  *See* Complaint, ¶ 32 (a)-(t).   In

Count II, titled "Bad Faith – Common Law and Statutory," Plaintiff claims entitlement to

"common law bad faith damages" and "statutory bad faith damages" under 42 Pa.C.S.A. Section

8371, based on the same allegations.  *Id.*, ¶ 48 (a)-(t).

Omni removed the case to this Court in accordance with 28 U.S.C. Sections 1332, 1441

and 1446, and filed an Answer with Affirmative Defenses. The parties have stipulated to the

relevant facts; each party now seeks judgment as a matter of law.


II.     **ARGUMENT**

   A.     **The Unlicensed Operator Exclusion is Valid and Enforceable as a
          Matter of Pennsylvania Law, and Furthers Pennsylvania Public
          Policy**

This dispute is governed by Pennsylvania law.   The Pennsylvania Supreme Court has

repeatedly explained that, "In construing a policy of insurance, we are required to give plain

meaning to a clear and unambiguous contract provision unless such provision violates a clearly

expressed public policy. *Williams v. GEICO*, 32 A.3d 1195, 1199-1200 (Pa. 2011), quoting

*Burstein v. Prudential Property & Cas. Ins. Co., 809 A.2d 204, 206 (Pa. 2002)* and citing

*Eichelman v. Nationwide Ins. Co.,* 711 A.2d 1006, 1008 (Pa. 1998) and *Prudential Prop. and*

*Cas. Ins. Co. v. Colbert,* 813 A.2d 747, 750 (Pa. 2002).

The burden to invalidate a contract provision on based a public policy concerns is a

heavy one: "We [the Pennsylvania Supreme Court] consistently have been reluctant to invalidate

a contractual provision due to public policy concerns. .... Generally, a clear and unambiguous

contract provision must be given its plain meaning unless to do so would be contrary to a clearly

expressed public policy. When examining whether a contract violates public policy, this Court is

mindful that public policy is more than a vague goal which may be used to circumvent the plain

meaning of the contract." *Williams, supra,* citing *Eichelman, supra.* Rather,

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy[.] ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Williams, supra,* citing *Eichelman, supra.* "It is only when a given policy is so obviously for or

against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in

regard to it, that a court may constitute itself the voice of the community in so declaring [that the

contract is against public policy]. *Id.* (emphasis supplied, internal citations omitted).

Here, there is no question that the "unlicensed operator" provision is clear and

unambiguous. Plaintiff's argument is that it should not be enforced because, according to

Plaintiff, it violates (1) the Pennsylvania Motor Vehicle Code, (2) the Pennsylvania Motor

Vehicle Financial Responsibility Law (MVFRL), and (3) the public policy of the

Commonwealth. *See, e.g.,* Plaintiff's brief at 21-22, 25.

Each of those arguments fails, as set forth below.

### 1.     The "Unlicensed Operator" Exclusion Does Not Violate the Motor Vehicle Code

Plaintiff first argues that the unlicensed operator exclusion violates Section 1574 of the

Motor Vehicle Code. The underlying complaint did not allege liability under Section 1574, but

even if it had, the unlicensed operator exclusion does not violate that section.

Section 1574 prohibits a vehicle owner from allowing an unlicensed driver to operate the vehicle. That Section penalizes such an owner in two ways: first, the owner commits a summary offense, and second, the owner is liable for any damages caused by the negligence of the driver:

> **Permitting unauthorized person to drive.**
>
> **(a) General Rule.** - No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.
>
> **(b) Penalty.** - Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S. §1574.

### a.    The underlying complaint did not assert a claim under section 1574

Plaintiff argues incorrectly that the Complaint asserted a cause of action for violating Section 1574. *See* Plaintiff's brief at 28, citing the Complaint at ¶13. That paragraph, however, alleges that <u>Lamar herself</u> was <u>directly</u> negligent in her entrustment of the vehicle to an unlicensed driver:

> 13.    The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless <u>conduct of the defendant owner</u>, Shameka Renee Lamar, which consisted of the following:
>
> \*\*\*
>
> (c)    <u>negligently and carelessly granting permission</u> to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

*See* Plaintiff's Complaint, Exhibit 5 to the Stipulation, at ¶13 (emphases supplied).

This paragraph does not mention Section 1574, or vicarious liability, at all; on the contrary, this paragraph asserts a <u>direct</u> negligence claim against owner Lamar, and asserts that Lamar's <u>own</u> negligence was a cause of the accident. This <u>direct</u> liability claim is - by definition - not a <u>vicarious</u> liability claim under Section 1574.

The two cases cited by Plaintiff explain exactly that. In *Terwilliger v. Kitchen,* 781 A.2d 1201, 1213 (Pa. Super. 2001), a dramshop defendant argued that the liability of the co-defendant vehicle owner under Section 1574 should be deemed joint and several with the liability of the co-defendant driver, rather than merely vicarious (if the owner and driver were joint tortfeasors, it could decrease the percentage of liability to be imposed on the dramshop defendant). After reviewing the statute and case law, the Superior Court stated, "[I]t seems to us that the legislature has intended to establish a system of vicarious liability," *quoting Commonwealth of Pa., Dept. of Public Welfare v. Hickey*, 582 A.2d 734, 737 (Pa. Cmwlth. 1990). The Superior Court concluded "[W]e agree with the trial court that the vehicle owner is vicariously liable for the damages caused by [driver]." *Terwilliger*, 781 A.2d at 1216.

*In O'Loughlin v. Hunger,* 2009 U.S. Dist. LEXIS 33711 (E.D. Pa. 2009), the court granted summary judgment in favor of the owner because there was no evidence of negligent entrustment. In doing so, the court explained in a footnote that although the plaintiff "does not cite section 1574, or even hint at its violation," a claimed violation of that section would not establish negligence: "Pennsylvania courts, however, have found that violation of [section 1574] only makes the automobile owner vicariously liable for the injuries caused by the driver of the vehicle and does not impose on the owner individual negligence under a negligent entrustment theory." *Id.* at *19-20, n.2 (citations omitted).

In sum, the underlying complaint did not assert a claim for vicarious liability under Section 1574. Plaintiff cannot ask to have the exclusion deemed invalid based on a claim that

9

was never part of the case. *See In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) ("Federal Courts have no jurisdiction to render advisory opinions. Put another way, they 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'").

<b>b.      The unlicensed driver provision does not violate Section 1574</b>

The unlicensed driver exclusion does not violate Section 1574 in any event. First, that Section does not even mention insurance; it certainly does not specify that an insurer must provide coverage when an insured vehicle is driven by an unlicensed driver.

Second, there is no dispute that a vehicle owner can be held vicariously liable for use of his or her vehicle by an unlicensed driver, but that does not support Plaintiff's argument for imposing coverage for such a claim. On the contrary, forcing insurers to provide coverage for excluded claims would undercut the purpose of the statute, because it would obviate the penalty the Legislature intended to impose on such owners. The Commonwealth Court has described the statute as promoting the Commonwealth's "vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so." *Commonwealth v. Jenks*, 296 A.2d 526, 529 (Pa. Cmwlth. 1991). Plaintiff's argument would mean that insurers could always be forced to cover unlicensed drivers one way or the other: coverage could properly be excluded for the unlicensed driver, but the same excluded claim would then have to be paid by the owner who is vicariously liable for the driver. Moreover, if vehicle owners could insure themselves against a statutory penalty for allowing such unlicensed drivers to operate their vehicles, that penalty would become no penalty to the owner at all.

Plaintiff argues (without citing any authority) that Section 1574 is like a "red light" violation; Plaintiff argues that Omni cannot preclude coverage "to an operator who runs a red

10

light" and therefore should not be able to restrict coverage to unlicensed operators. *See* Plaintiff's brief at 28. Plaintiff's "red light" argument fails to distinguish between conduct giving rise to liability, and permissible limitations on drivers of vehicles. A policy could not qualify under the MVFRL as "respond[ing] in damages for" accidents if the policy excluded the causes of accidents (such as running a red light).

Policies can, however, limit coverage to certain drivers of vehicles without violating the MVFRL. As is discussed in detail below, the MVFRL does not require a vehicle's liability policy to provide coverage no matter who is driving it. On the contrary, courts have upheld named-driver exclusions (*see, e.g., Northern Ins. Co. v. Schneck*, 813 A.2d 828 (Pa. 2002), discussed below), and even named-driver-only policies (*see, e.g., Byoung Suk An v. Victoria Fire and Cas. Co.*, 113 A.2d 1283 (Pa. Super. 2015), also discussed below). Similarly, "permissive use" exclusions have been upheld even against "innocent" claimants who did not know that the use was not permissive. *See, e.g., Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338 (Pa. Super. 1994), *appeal denied*, 659 A.2d 988 (Pa.1995) (non-permissive use exclusion did not violate the legislative intent behind the MVFRL).

In sum, the unlicensed driver exclusion does not violate Section 1574. Rather, it is entirely consistent with, and furthers the purpose of, that Section. Plaintiff's argument to invalidate the exclusion on that basis should be rejected.

### 2.   The Unlicensed Operator Exclusion Does Not Violate the MVFRL

Plaintiff next argues that the unlicensed operator exclusion violates Sections 1786(a) and (f) of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1786(a) and (f). However, those provisions, and the case law interpreting them, do not require extending coverage to unlicensed drivers despite a clear policy exclusion.

11

Section 1786(a) requires that registered motor vehicles be covered by "financial responsibility." *See* 75 Pa.C.S. §1786(a) ("Required financial responsibility - General rule").[2] The statute defines "financial responsibility" as "The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident." *See* 75 Pa.C.S. §1702.

There is no question that Lamar's motor vehicle was covered by a policy of insurance that met the "financial responsibility" requirement of Section 1786(a). There is also no question, however, that the policy excluded coverage for the unlicensed driver here.[3]

Plaintiff argues that Section 1786(f) requires coverage be extended to any and all permissive drivers of an insured vehicle, regardless of exclusions. *See* Plaintiff's brief at 29. However, that is not what Section 1786(f) says. Section 1786(f) is a penalty provision. It does not require a policy to provide coverage (or to provide different or broader coverage). Section 1786(f) merely penalizes owners whose vehicles are operated without coverage:

> **(f) Operation of a motor vehicle without required financial responsibility. --**
>
> Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter. In addition to the penalties provided by subsection (d), any person who fails to comply with this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $ 300.

---

[2] Section 1786 has its own penalty provision if a vehicle is not covered by financial responsibility. See Section 1786(f).

[3] Plaintiff asserts that policy exclusions are to be "narrowly construed." Plaintiff's brief at p. 25. That proposition is irrelevant here: the exclusion is clear, and there is no argument that Chris Aaron a/k/a Chris Porter could avoid the exclusion under any construction of it.

75 Pa.C.S. § 1786(f).

The exclusion in this case is consistent with, and supported by, Pennsylvania case law upholding policy provisions that limit coverage to – or exclude - certain drivers.  In the recent case of *Byoung Suk An v. Victoria Fire and Cas. Co.*, 113 A.2d 1283 (Pa. Super. 2015), *appeal denied* 2015 Pa. LEXIS 2831 (Pa., December 8, 2015), the Superior Court upheld a limitation substantially broader than the exclusion in this case. In *Victoria*, the policy did not provide liability coverage to <u>any</u> person not specifically listed on the policy. *See* 113 A.2d at 1286.  The only listed driver was the insured herself; at the time of the accident, the operator was a friend of the insured's son, who had given the friend permission to drive. *Id.*  The claimant argued that the "named driver only" policy improperly expanded the "named driver exclusion" permitted under 75 Pa. C.S. Section 1718(c).

The Superior Court rejected that argument, explaining that section 1718(c) addresses policies wherein an insured specifically excludes a driver <u>who would otherwise be covered</u> from receiving benefits under a policy enumerated in section 1711 or 1712 (which list medical, wage loss and similar first-party benefits). The Superior Court held that section 1718(c) was not applicable to a "named driver only" policy, and that the policy limitation was clear and unambiguous.  *See also Selective Way Ins. Co. v. Gingrich*, 2009 WL 1586577 (M.D. Pa. 2009) (named driver exclusion applies to prevent any policy coverages, including   liability and UM/UIM, from applying to any claim arising from operation of the vehicle by the excluded driver, and thus carrier had no obligation to defend or indemnify against claim by injured party)

Plaintiff argues that Section 1786(f) "implicitly" directs that all permissive users be insured, relying upon *Progressive Northern Ins. Co. v. Universal Underwriters Ins. Co.*, 898 A.2d 1116 (Pa. Super. 2006), *appeal denied* 909 A.2d 1290 (Pa. 2006). However, the *Progressive Northern* case is not controlling or persuasive, and is factually distinguishable.

First, the *Progressive Northern* case predates *Victoria, above,* in which the Superior Court upheld a "named driver only" provision to preclude coverage to a permissive driver because he was not named on the policy. Plaintiff's theory that *Progressive Northern* "implicitly" requires owners to always cover permissive users is clearly contradicted by *Victoria.*

Second, *Progressive Northern* involved the very different issue of whether, under the MVFRL, a driver's household policy should be the source of liability coverage, or whether the policy covering the vehicle should apply. In *Progressive Northern,* an employee was driving his employer's vehicle, which was insured by Universal. Universal's policy extended coverage to any person "required by law to be an insured" while using a covered auto. Universal argued, citing pre-MVFRL case law, that the driver was not "required by law" to be insured on the employer's policy, because the employee had a household policy with Progressive. The Superior Court questioned even the pre-MVFRL result, and concluded that the MVFRL's addition of Section §1786(f) was an "implicit" direction that owners provide coverage, "consistent with the concept that primary coverage follows ownership of the vehicle." *Id.,* 898 A.2d at 1119.

The issue here is not whether the liability policy on a vehicle generally "follows" it to provide coverage for a permissive driver. Rather, Plaintiff's claim is that a specific, unambiguous exclusion of the driver is contrary to the MVFRL. The *Progressive Northern* case does not support Plaintiff's argument.

The Legislature, in drafting the MVFRL, was specific in identifying situations where coverage was required or could not be reduced or limited. *See, e.g.,* 75 Pa.C.S. §1724 (listing non-excludable conditions in the first-party benefits section of the MVFRL); §§1711 and 1712 (listing various first-party coverages that must be offered); §1731 (requirements for rejecting stacking of uninsured and underinsured motorist coverages); §1734 (requirements for selecting limits of underinsured motorist coverage lower than the limits of liability coverage). If the

14

Legislature had intended to require insurers to extend liability coverage to all drivers, even when the drivers do not have drivers' licenses, the Legislature could have done so. They did not. Excluding such drivers from liability coverage is not contrary to the MVFRL.

> **3.   The Unlicensed Operator Exclusion Does Not Violate Public Policy; It Is Consistent With and Advances that Policy**

Plaintiff's third argument is that the unlicensed operator exclusion violates public policy. *See* Plaintiff's brief at 32. Plaintiff offers the vague, general platitude that: "The public policy of Pennsylvania favors the deterrence of uninsured drivers and the extension of coverage to motor vehicle operators. It is in the interest of the public good to have insured motorists on the highways." *Id.*

Omni described above (pp. 6-7) the "heavy burden" required to invalidate a clear policy provision on so-called "public policy" grounds. To briefly summarize, the Pennsylvania Supreme Court is reluctant to invalidate a contractual provision due to public policy concerns, and a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. Such a policy cannot be "general considerations of supposed public interest" or "a vague goal" being used to "circumvent the plain meaning of the contract." *Williams, supra, citing Eichelman, supra.* "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]." *Id.*

Plaintiff does not dispute this standard. Plaintiff argues, however, that the Supreme Court's evaluation of public policy has changed. Plaintiff argues that while the overriding goal of the MVFRL was "initially" cost containment, the Supreme Court has "abandoned" that point of view and has recognized the goal of maximum feasible restoration to accident victims as an

equally important purpose of the law. *See* Plaintiff's brief at 22-23. Plaintiff relies upon *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011), arguing that "the majority of the justices on the Court at that time adopted a rationale which significantly departs from prior pronouncements." *Id.* at 24.

Plaintiff mischaracterizes the *Williams* case, which does not support Plaintiff's position that cost containment has been "abandoned" in Pennsylvania. In *Williams*, the Supreme Court upheld a "regular use" exclusion that precluded the claimant from obtaining underinsured motorist benefits from his own policy if he was injured in another vehicle he regularly used. The claimant was a state police officer and was injured while using his police vehicle. He argued that despite prior case law upholding such exclusions, upholding the exclusion in his case would violate a public policy of protecting first responders. *Williams*, 32 A.3d at 1201. The Supreme Court, in accordance with its prior decisions in, *inter alia, Burstein v. Prudential Property & Cas. Ins. Co.*, 809 A.2d 204 (Pa. 2002), upheld the regular use exclusion.

In holding that public policy did not require any different outcome in the "first responder" situation, the Court conducted the same public policy analysis followed in *Burstein*, and held, "Appellant's position conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected." *Williams*, 32 A.3d at 1206. In three concurring opinions in *Williams,* four justices urged that cost containment should not be a "mantra," and that "equally important policies and goals" should be recognized. *See* 32 A.3d beginning at 1210 (concurring opinions). However, the Supreme Court did not "abandon" cost containment; on the contrary, the Court again recognized it as one of the "overall policies of the MVFRL."

In 2015, a unanimous panel of the Superior Court applied *Williams* to reject the same argument Plaintiff is making in this case. In *Byoung Suk An v. Victoria, supra*, the claimant argued that a "named driver policy," which covered only the specific driver named in the

application, was contrary to public policy. The claimant argued (like Plaintiff in this case) that the policy would violate Pennsylvania public policy because it would "increase the number of uninsured motorists on Pennsylvania roads." *Victoria*, 113 A.3d at 1291.

The Superior Court applied the analysis summarized above and set forth more fully at pp. 6-7 of this brief, quoting *Williams* and *Eichelman*. The Superior Court also cited *Progressive Northern Ins. Co. v. Schneck*, 813 A.2d 828 (Pa. 2002), in which the Supreme Court upheld a named driver exclusion as consistent with the overarching public policy of cost containment, and *Donegal Mut. Ins. Co. v. Fackler*, 835 A.2d 712 (Pa. Super. 2003), in which the Superior Court likewise upheld a named driver exclusion, and *Infinity Indem. Ins. Co. v. Gonzalez*, 2012 U.S. Dist. LEXIS 77004 (E.D. Pa. 2012) (district court upheld "named driver only" policy). The Superior Court specifically focused on cost considerations in noting that "provision of low-cost, affordable policies in return for motor vehicle liability coverage of only the named driver, and the concomitant risk reduction, does not violate public policy." *Victoria*, 113 A.3d at 1292, citing *Williams*, 32 A.3d at 1200. The Superior Court concluded that any such determination would have to be a question for the legislature. *Id.*

It is clear from the *Victoria* case that the public policy of cost control has not been "essentially abandoned" post-*Williams*, as Plaintiff argues.[4] On the contrary, cost control continues to be a primary consideration of public policy analyses under the MVFRL, and Omni's policy furthers that consideration by ensuring that carriers are not required to bear risks of unlicensed drivers that the carriers would never have agreed to insure (the cost of which would pass to honest insureds in the form of higher premiums. The unlicensed driver exclusion also

---

[4]    Plaintiff also cites *Heller v. Pennsylvania League of Cities*, 32 A.3d 1213 (Pa. 2011), for the proposition that cost containment "cannot be mechanically invoked" to restrict coverage. In *Heller*, the Supreme Court invalidated an exclusion that prevented any claimant eligible for worker's compensation benefits from receiving underinsured motorist benefits.

furthers the public policy of discouraging owners from allowing unlicensed drivers to operate vehicles. *See Commonwealth v. Jenks, supra*, 296 A.2d at 529 (Pa. Cmwlth. 1991) (recognizing the Commonwealth's "vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so.").  The exclusion also prevents unscrupulous drivers from acquiring vehicles and policies through "straw man" purchases (where the "owner" is merely fraudulently acquiring the vehicle on behalf of another), and it furthers the Legislature's intention that owners who do permit unlicensed drivers to operate their vehicles are to be penalized via vicarious liability for those drivers.

Plaintiff's "public policy" argument essentially amounts to saying "it's good to have insured drivers." This is the kind of "vague goal" and "general consideration of supposed public interest" that may not be used to circumvent the plain meaning of a contract.  As in *Victoria*, *Williams, Eichelman, Schneck*, and the other case law discussed above, there is no "dominant public policy" that could justify requiring an insurer to provide liability coverage to an unlicensed driver who falls within a clear exclusion.

Accordingly, Plaintiff's motion for summary judgment should be denied, and Omni's cross-motion for summary judgment should be granted.

**B.    Plaintiff's "Bad Faith" Claim Fails as a Matter of Law: Omni Correctly, Properly and Reasonably Denied Coverage to an Unlicensed Driver Who Was Not "Insured" Under the Omni Policy**

Plaintiff also alleges that Omni acted in bad faith in not providing Shameka Renee Lamar with a defense and indemnification in the underlying Duncan lawsuit.  Plaintiff concedes that Omni could properly deny coverage to the unlicensed driver, but argues that as to Lamar, Omni "failed to comply with the specific mandates of Pennsylvania law" in relying on the unlicensed driver exclusion. *See* Plaintiff's brief at 34.  Plaintiff then repeats his arguments that the

exclusion violates Section 1574 of the Motor Vehicle Code, Section 1786 of the MVFRL, and

the "public policy" operators of motor vehicles should be insured. *Id.* at 34-35.

Omni is entitled to judgment on Plaintiff's "bad faith" claims as a matter of law.

> **1.    Standard for summary judgment on "bad faith" claim under Pennsylvania law**

The Pennsylvania statute governing "bad faith" claims against insurance companies is 42

Pa.C.S. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

The statute does not define "bad faith," and the Pennsylvania Supreme Court has likewise

not defined that term. The Third Circuit has predicted that the Supreme Court would adopt the

definition previously set forth by the Superior Court in *Terletsky v. Prudential Prop. and Cas.*

*Ins. Co.*, 649 A.2d 680 (Pa. Super. 1984):

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 136-137, quoting *Terletsky*, 649 A.2d

at 688 (internal citations omitted), and *Keefe v. Prudential Property and Cas. Ins. Co.*, 203 F.3d

218, 225 (3d Cir. 2000).

> Ultimately, in order to recover on a bad faith claim, the insured
> must prove: (1) that the insurer did not have a reasonable basis for
> denying benefits under the policy; and (2) that the insurer knew of
> or recklessly disregarded its lack of a reasonable basis in denying
> the claim.

*Babayan*, 430 F.3d at 137, citing *Keefe*, 203 F.3d at 225.

The insured must meet this burden of proof by clear and convincing evidence. *See*

*Terletsky*, 649 A.2d at 688. "The 'clear and convincing' standard requires that the plaintiff show

'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction,

without hesitation, about whether or not the defendants acted in bad faith.'" *J.C. Penney Life Ins.*

*Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004), quoting *Bostick v. ITT Hartford Group, Inc.*, 56

F. Supp. 2d 580, 587 (E.D. Pa. 1999); *see also, e.g., Treadways LLC v. Travelers Indem. Co.*,

467 Fed. Appx. 143, 147  (3d Cir. 2012). "Thus, the plaintiff's burden in opposing a summary

judgment motion is commensurately high in light of the substantive evidentiary burden at trial.

*Pilosi, supra*, citing *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999).

Importantly, "A reasonable basis is all that is required to defeat a claim of bad faith."

*Pilosi*, 393 F.3d at367, citing *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d

Cir. 1995).

> **2.    Omni Denied Coverage in Good Faith Pursuant to a Specific
> Policy Exclusion, and that Denial Does Not Constitute "Bad
> Faith" as a Matter of Law**

Plaintiff's bad faith claim fails as a matter of law for two reasons. First, there is no

coverage, as set forth above. *See AmerisourceBergen Corp. v. ACE Am. Ins. Comp.*, 2013 Phila.

Ct. Com. Pl. LEXIS 249, *31 (C.P. Phila. 2013), *aff'd* 100 A.3d 283 (Pa. Super. 2014), *citing*

*Frog, Switch & Mgf., Co. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. 1999) ("Amerisource

claims that Ace's bases for denying coverage were not reasonable, and claims handling was

conducted in bad faith. Because this court has determined that an exclusion applies, this claim fails.").

Second, there is no question that Omni has set forth a "reasonable basis" to defeat any claim of bad faith.   The documents attached to the stipulation conclusively establish that reasonable basis as a matter of law.

First, by letter of July 8, 2014, Omni Bodily Injury Supervisor Andrew Funk wrote to insured Shameka Lamar to advise her that after investigation, "We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver." *See* Stipulation ¶13, and Exhibit "4" thereto.   The letter specifically cites and quotes the unlicensed driver exclusion. *Id.* On September 16, 2014, Omni Litigation Manager Scott Mascioli reiterated this information in separate letters to both Lamar and the driver, and provided each of them with a copy of the lawsuit against them. *See* Stipulation ¶13, and Exhibits "6" and "7" thereto.

Plaintiff does not argue that the policy as written provided coverage, or that the policy was ambiguous and should have been construed in his favor, or that the carrier delayed, or denied coverage without notifying him, or any other basis.   Plaintiff merely argues that Omni's denial constitutes "bad faith" because Omni's policy language should not be enforced.

Plaintiff's argument fails, because the policy as written did not provide any coverage for this accident. *See, e.g., Frog Switch, supra*, 193 F.3d at 744 (affirming summary judgment in favor of the insurer on claims of breach of duty to defend and bad faith, because the claims did not fall with coverage of policies: "[B]y the plain terms of the policies, the insurers had no duty to defend against such claims. We also rule that the insured cannot maintain actions for bad-faith denial of coverage against them.").

In *Treadways LLC v. Travelers Indem. Co.*, 467 Fed. Appx. 143 (3d Cir. 2012), the Third Circuit affirmed the District Court's grant of summary judgment in favor of the insurer in a

21

situation similar to this case. Travelers, the carrier in *Treadways*, denied coverage on the basis that the vehicle being operated at the time of the accident in question was not covered under the Travelers policy. Travelers withdrew its defense, and a judgment was ultimately entered against the Travelers insured. The Third Circuit held that where it was undisputed that the policies precluded coverage, "This alone was sufficient for the District Court to dismiss the bad faith claim. Because the claims asserted in the [underlying] Suit were not covered by the policies, Travelers had good cause to deny coverage and cease defending the litigation." *Treadways*, 467 Fed. Appx. at 147.

In *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500 (3d Cir. 2012), the Third Circuit concluded that a duty to defend had arisen in the course of the underlying proceedings, but nevertheless affirmed the district court's conclusion that the carrier did not act in bad faith where it had relied upon an exclusion to deny coverage: "The sanctions exclusion in the Policy provided Travelers a reasonable basis for declining to provide a defense to Post, and there is nothing in the record—let alone clear and convincing evidence—indicating that Travelers' purported mishandling of Post's claim was motivated by a dishonest purpose or ill will." *Post*, 691 F.3d at 594-595.

Plaintiff fails to raise any allegations that could possibly constitute bad faith under Pennsylvania law. Omni's policy contains a clear exclusion that applies to the facts here. The exclusion constituted a reasonable basis to deny coverage. "A reasonable basis is all that is required to defeat a claim of bad faith." *Pilosi*, supra, 393 F.3d at 367.

### III.      CONCLUSION

Omni properly denied coverage for the underlying lawsuit, because the liability coverage of Omni's policy excludes any coverage for bodily injury or property damage resulting from the use of any vehicle by an unlicensed driver. There is no dispute that the exclusion applied to the

22

accident at issue.  The exclusion does not violate Pennsylvania law or public policy, and it furthers the Legislature's intent to penalize owners of vehicles if those owners allow unlicensed operators to drive.  Accordingly, the exclusion should be upheld and summary judgment should be entered in favor of Omni and against Plaintiff.  Summary judgment should also be entered in favor of Omni and against Plaintiff on Plaintiff's "bad faith" claim, because there was no coverage, and because Omni certainly had a reasonable basis to deny coverage in light of the exclusion.

Respectfully submitted:

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY:

R. BRUCE MORRISON, ESQUIRE
TERESA FICKEN SACHS, ESQUIRE
PA Attorney I.D. Nos. 34797/41136
2000 Market Street, Suite 2300
Philadelphia, PA 19103
215-575-2600/ 215-575-0856 (F)
rbmorrison@mdwcg.com
tfsachs@mdwcg.com
*Attorneys for Defendant*

Dated: July 18, 2016

23

## CERTIFICATE OF SERVICE

I, R. Bruce Morrison, Esquire, attorney for Defendant, hereby certify that a true and correct copy of the foregoing Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment, was served upon the following parties via electronic court filing system, on the below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square -- West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

R. Bruce Morrison

Dated: July 18, 2016

LEGAL/105904497.v1

24