```
IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| RICHARD DUNCAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | NO. 16-1489 |

MEMORANDUM

Bartle, J.                                              September 28, 2016

Before the court are the cross-motions for summary judgment of plaintiff Richard Duncan ("Duncan") and defendant Omni Insurance Company ("Omni") under Rule 56 of the Federal Rules of Civil Procedure with respect to an exclusion in an Omni automobile insurance policy.

I.

The parties have stipulated to all the relevant material facts. Duncan was injured in an automobile collision on October 8, 2012, while he was a passenger on board a SEPTA Route 47 bus. The bus was struck by a motor vehicle at or near the intersection of 8th and Dickinson Streets in Philadelphia. Shameka Renee Lamar ("Lamar") held title to the motor vehicle, a 2003 Chevrolet Avalanche and insured it through Omni under a Private Passenger Auto Insurance Policy. Chris Aaron ("Aaron"), a/k/a Chris Porter, was the operator of the vehicle at the time

of the collision.  Aaron was not licensed to drive an automobile.

Following the collision, Duncan commenced an action for damages against Lamar and Aaron in the Court of Common Pleas of Philadelphia County. He alleged negligence and negligent entrustment.  See <u>Richard Duncan v. Chris Aaron and Shameka Renee Lamar</u>, No. 0479 (Pa. Ct. Comm. Pleas, Sept. 2014).  Omni, Lamar's insurer, denied all coverage for loss sustained in the collision on the basis of an unlicensed driver exclusion contained in the insurance policy.  Omni informed Lamar and Aaron of the coverage denial and advised them to retain their own attorneys.

Duncan, Lamar, and Aaron proceeded to arbitration in the Court of Common Pleas of Philadelphia County.  Arbitrators awarded $28,000 in damages in favor of Duncan.  Following the entry of Judgment on the Arbitration Award, Lamar and Aaron assigned all claims and rights to Duncan against Omni.  In satisfaction of the assignment, Duncan agreed not to collect or execute against Lamar and Aaron, and he agreed to mark the judgment against Lamar and Aaron satisfied upon the conclusion of proceedings against Omni.

Duncan thereafter commenced this action in the Court of Common Pleas of Philadelphia County against Omni seeking to collect from Omni the $28,000 judgment.  He also alleges a claim

of bad faith in violation of the Pennsylvania Bad Faith Statute, 42 Pa. Const. Stat. § 8371 (2015).[1] Omni removed the action to this court based on diversity of citizenship. See 28 U.S.C. § 1332.

II.

Lamar's Omni Private Passenger Auto Insurance Policy for the 2003 Chevrolet Avalanche provided in Part A Liability Coverage:

> . . .
>
> B. **Insured**[2] as used in this Part means:
>
>  . . .
>
>> (3) A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of **your covered auto**.

---

1. The jurisdictional amount in an action under 28 U.S.C. § 1332(a) is met where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. Our Court of Appeals has stated the amount in controversy is not based "on the 'low end of an open-ended claim,' but rather on 'a reasonable reading of the value of the rights being litigated.'" Judon v. Travelers Property Cas. Co. of America, 773 F.3d 495, 507 (3d Cir. 2014) (quoting Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002). Because of the bad faith claim, we deem the amount in controversy requirement to have been met.

2. It appears that the policy uses bold text to set apart terms and phrases defined therein. To the extent that we quote from the policy, all bold text in this opinion appears in the policy and has not been added by the court.

The policy contained an unlicensed driver exclusion that provided:

> A.  **[Omni]We** do not provide liability coverage for any **insured**:
>
>     . . .
>
>     (16) For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:
>
>     . . .
>
>     (c) <u>Does not have a valid driver's license; or</u>
>
>     (d) <u>Has a suspended or revoked driver's license</u>.

(emphasis added).  Omni argues, in support of its motion for summary judgment, that the exclusion above in the Omni insurance policy allowed Omni to disclaim coverage for the collision between Aaron and the SEPTA Route 47 bus because Aaron was an unlicensed driver.

Duncan opposes Omni's motion for summary judgment and has moved for partial summary judgment in his favor on the basis that the exclusion upon which Omni relies is void and unenforceable under the Pennsylvania Motor Vehicle Code, 75 Pa. Cons. Stat. § 1501 (2015) et seq., and under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Const. Stat.

§ 1701 (2015) et seq. He contends this exclusion violates Pennsylvania public policy.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The facts here, as noted above, are undisputed. The sole issue is which party is entitled to judgment as a matter of law.

II.

We now turn to the exclusion in the Omni insurance policy. The parties do not dispute that in this diversity action the substantive law of Pennsylvania applies. See, e.g., Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

The interpretation of an insurance policy is a question of law for the court. See Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985); 401 Fourth St., Inc. v. Inv'rs Ins. Grp., 879 A.2d 166, 171 (Pa. 2005). The primary goal is to "ascertain the parties' intentions as manifested by the policy's terms." See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006). When the language of the policy is clear, we give effect to its plain meaning. See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010). The meaning of the policy provision in issue is

crystal clear.  There is an exclusion for coverage when, as here, the driver who caused the bodily injury was unlicensed.  The only issue is whether the clear language violates Pennsylvania law.

Duncan maintains that the exclusion violates § 1574 of the Pennsylvania Motor Vehicle Code ("MVC") and §§ 1786(a), 1786(f), and 1702 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL").  Section 1574 of the MVC states:

> (a) **General rule. - -** No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driver.
>
> (b) **Penalty. - -** Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.  75 Pa. Const. Stat. § 1574 (2015).

Duncan argues that § 1574 of the MVC imposes vicarious liability on owners who permit unlicensed drivers to operate their vehicles, and therefore Omni's exclusion disclaiming liability coverage violates § 1574.  However, this provision does not help Duncan.  Whatever the remedy may exist against Lamar, the owner of the vehicle, there is nothing in § 1574 which makes any reference to insurance coverage.  It neither requires insurance coverage nor prohibits any limitation on

-6-

insurance coverage. Therefore, the Omni exclusion does not violate § 1574.

We turn to §§ 1786(a), 1786(f), and 1702 of the MVFRL. Sections 1786(a) and 1786(f) of the MVFRL provide:

> (a) **General rule. - -** Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.
>
> . . .
>
> (f) **Operation of motor vehicle without required financial responsibility. - -** Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter. In addition to the penalties provided by subsection (d), any person who fails to comply with this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $300.[3] 75 Pa. Const. Stat. § 1786(a), (f) (2015).

Section 1702, in relevant part, defines "financial responsibility" of a vehicle owner as:

> The ability to respond in damages for liability on account of accidents arising

---

3. Section 1786(d), referenced in § 1786(f), provides for the suspension of the registration and of the operating privilege of the vehicle if the Department of Transportation determines that the vehicle has been operated or permitted to be operated without the required financial responsibility. See 75 Pa. Const. Stat. § 1786(d) (2015).

>     out of the maintenance or use of a motor
>     vehicle in the amount of $15,000 because of
>     injury to one person in any one accident, in
>     the amount of $30,000 because of injury to
>     two or more persons in any one accident and
>     in the amount of $5,000 because of damage to
>     property of others in any one accident.  The
>     financial responsibility shall be in a form
>     acceptable to the Department of
>     Transportation.  75 Pa. Const. Stat. § 1702
>     (2015).

Duncan asserts that § 1786(a) requires financial responsibility of motor vehicle owners and that § 1786(f) requires that this financial responsibility extends to unlicensed drivers.  We disagree.  Section 1786(a) requires motor vehicles in Pennsylvania to be covered by financial responsibility.  <u>See</u> 75 Pa. Const. Stat. § 1786(a) (2015).  Section 1786(f) prohibits an owner of a motor vehicle from operating or permitting the operation of a motor vehicle without the required financial responsibility, that is, the ability to respond in damages for personal injuries in a certain amount.  <u>See</u> 75 Pa. Const. Stat. § 1786(f) (2015).  Again, whatever liability may be assessed against a vehicle owner who violates this provision, the statute cannot reasonably be interpreted to require an owner's insurer to provide coverage under an insurance policy for injuries by an unlicensed driver.

Duncan relies on Pennsylvania Superior Court decisions <u>Progressive Northern Insurance Co. v. Universal Underwriters Insurance Co.</u>, 898 A.2d 1116 (Pa. Super. Ct. 2006), and <u>McWeeny</u>

v. Estate of Strickler, 61 A.3d 1023 (Pa. Super. Ct. 2013). However, neither of these cases supports his position.

In Progressive Northern, the insured's son was in a motor vehicle accident while he was driving a vehicle loaned to the insured by a car dealership. See Progressive N. Ins. Co., 898 A.2d at 1117. The issues before the Pennsylvania Superior Court were which insurance carrier was required to provide liability coverage to the insured, the carrier of the loaned vehicle, or the carrier of the insured's personal vehicle, and whether the policies, which contained "mutually repugnant clauses" concerning priority of coverage, could practically be enforced. See id. at 1118-19. The case had nothing to do with insurance coverage for unlicensed drivers.

In McWeeny, a driver, who was listed as a principal driver on the vehicle's insurance policy, was involved in a motor vehicle accident. See McWeeny, 61 A.3d at 1025. She sought to recover benefits under the policy, but the other driver in the accident alleged that she could not recover because she was insured under the limited tort option of the policy, and therefore could not recover without having sustained a serious injury. See id. Again, this case did not involve the issue of coverage for unlicensed drivers.

III.

We now turn to Duncan's assertion that the exclusion is contrary to public policy. We consider public policy arguments in light of "reference to the laws and legal precedents and not from general considerations of supposed public policy interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy." Burnstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 207 (Pa. 2002) (quoting Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1008 (Pa. 1998)). This court has declared there is a "'heavy burden required to declare an unambiguous provision of an insurance contract void as against public policy.'" Williams v. Allstate Ins. Co., 595 F.Supp.2d 532, 542 (E.D. Pa. 2009) (quoting Generette v. Donegal Mut. Ins. Co., 957 A.2d 1180, 1190 (Pa. 2008)).

Duncan argues that the exclusion is contrary to the public policy of the Commonwealth because it frustrates the remedial purpose of the MVFRL. This argument fails. The Pennsylvania Supreme Court has identified cost containment, freedom of consumer choice, as well as remediation as goals of the MVFRL. See Williams v. GEICO Gov't Emp. Ins. Co., 32 A.3d 1195, 1203 (Pa. 2011); see also Progressive N. Ins. Co. v. Schneck, 813 A.2d 828, 832 (Pa. 2002). It recognizes that the

-10-


goal of cost containment of insurance policies allows consumers to have the ability to pay more in premiums for greater coverage, and less in premiums for lesser coverage.  See GEICO, 32 A.3d at 1203.

Duncan avers that the exclusion contradicts the public policy of deterring unlicensed drivers from operating vehicles. We do not understand how insuring unlicensed drivers will keep them off of the road.  If anything, the contrary seems more likely.

We acknowledge a public policy of extending insurance coverage to all licensed drivers.  However, it does not extend to unlicensed drivers.  The MVFRL mandates certain benefits that must be excluded from cover under § 1718, as well as certain benefits that cannot be excluded from coverage under § 1724.[4] This public policy, as expressed by the General Assembly, does not require automobile insurance coverage for personal injuries in all situations.  The MVFRL is silent with respect to insurance coverage for unlicensed drivers.

---

3.  When an insured's conduct in the following three ways contributes to the insured's injury, an insurer must exclude an insured from benefits:  while intentionally injuring, or attempting to injure, himself or another, while committing a felony, or while seeking to elude lawful apprehension or arrest by law enforcement.  See 75 Pa. Const. Stat. § 1718(a) (2015). On the contrary, an insurance policy provision may not exclude benefits solely because the driver of the insured vehicle was under the influence of alcohol or drugs at the time of the accident.  See 75 Pa. Const. Stat. § 1724(a) (2015).

While the MVFRL does not address the subject of insurance coverage for unlicensed drivers, the Pennsylvania Insurance Commissioner has done so.  Pursuant to The Insurance Company Law of 1921, 40 Pa. Cons. Stat. Ann. § 477b (2015), the Insurance Commissioner must approve the language and terms of all casualty insurance policies issued in the Commonwealth.  The imprimatur of the Commissioner on the Omni unlicensed driver exclusion, together with the absence of any specific legislative mandate for the inclusion of such coverage, undermines Duncan's argument that the exclusion is void as against Pennsylvania public policy.

Moreover, the exclusion is consistent with the cost containment purpose of the MVFRL.  See GEICO, 32 A.3d at 1203.  If insurance policies had to provide coverage for unlicensed drivers, premiums undoubtedly would increase.  Whether such coverage should exist is a matter for the General Assembly.

Finally, Duncan has cited no precedent where the courts of Pennsylvania have overturned an automobile insurance provision as against public policy.  In fact, the Pennsylvania Supreme Court has upheld the validity of various exclusions in insurance policies on several occasions.  See Burnstein, 809 A.2d at 210; see also GEICO, 32 A.3d at 1201; see also Schneck, 813 A.2d at 834; see also Eichelman, 711 A.2d at 1006.

For example, the Pennsylvania Supreme Court has held that an exclusion that disclaims coverage when an insured driver drives a regularly used, non-owned vehicle is allowable under the MVFRL and does not violate public policy.  See Burstein, 809 A.2d at 210.  In its analysis, the court stated that finding the exclusion invalid would force the insurance company to "underwrite unknown risks that it had not been compensated to insure," thereby frustrating the goal of cost containment.  Id.

The Pennsylvania Supreme Court has also decided that an exclusion was not void as against public policy where an insurer disclaimed underinsured motorist coverage to an insured Pennsylvania State Trooper under his personal automobile insurance policy when he was injured in an accident while driving a state covered vehicle provided to him for regular use.  See GEICO, 32 A.3d at 1209.  In upholding the exclusion, the court declined to weigh the importance of various public policy concerns.  Id. at 1203-04.  The Court stated:

> Appellant asks us to weigh the protection of first responders against the recognized scheme of cost containment underlying the MVFRL.  We have consistently held, however, that this is not the proper function of this Court to weigh competing public policy interests; rather that task is bested suited for the legislature.  GEICO,32 A.3d at 1203. (citing Generette v. Donegal Mut. Ins. Co., 957 A.2d 1180, 1192 (Pa. 2008)).

In sum, the exclusion of insurance for unlicensed drivers does not violate the public policy of Pennsylvania.

IV.

Accordingly, we will grant the motion of Omni for summary judgment and deny the motion of Duncan for partial summary judgment.